ROBERT W. HENRY, MERCURY CLEANERS, INC., A CORPORATION, LOIS WARD, APPELLANTS, *v.* BEN BABER AND DOLORES BABER, RESPONDENTS.

No. 4111

January 28, 1959　　　　　　　　334 P.2d 839

*Woodburn, Forman, Wedge, Blakey & Thompson,* of Reno, for Appellants Robert W. Henry and Mercury Cleaners, Inc.

*Vargas, Dillon & Bartlett,* of Reno, for Appellant Lois Ward.

*Laxalt, Ross & Laxalt,* of Carson City, for Respondents.

## OPINION

By the Court, BADT, J.:

This was a suit for damages growing out of a four-car accident occurring May 31, 1956, on Highway 50 near Lake Tahoe. Car No. 1, the first car of the group, was driven by appellant Lois Ward (herein referred to as Ward), car No. 2 is not involved in this appeal, car No. 3 was driven by respondent Dolores Baber (hereinafter called Baber), and was struck by car No. 4 driven by appellant Henry (hereinafter called Henry) and owned by appellant Mercury Cleaners, Inc. (hereinafter called Mercury). Pursuant to jury verdict, judgment was entered in favor of Baber against Henry, Mercury and Ward, jointly and severally. The judgment was for $20,-000 general damages in favor of Baber and $3,250 in favor of her husband Ben Baber. In answer to special interrogatories, the jury stated that its verdict in favor of Dolores Baber for $20,000 general damages included special damages in the sum of $2,520 for wages lost as a result of the accident.

Henry and Mercury appealed through their counsel and Ward appealed separately through her counsel. The appeals were separately briefed and separately argued through such respective counsel, although all arguments, pursuant to stipulation and order, were heard at the same session of court.

(1) Henry and Mercury present but one assignment of error, namely, the action of the court in sustaining

an objection to a question propounded by them to Baber, called by them as an adverse witness, on cross-examination. The following took place on the second day of the trial: "Q. Mrs. Baber, you have testified that for a period of about two years before this accident you earned on the average of $140.00 a month in your housework; is that true? A. Yes, sir. Q. Did you report that amount to the government on your income tax returns?"

The question last quoted was objected to "on the ground that whether or not Mrs. Baber reported this income on her income tax return is completely immaterial and irrelevant." The objection was argued in the absence of the jury and sustained by the court.

Baber's wage loss resulting from her injuries was asserted in her complaint, was denied in the answer of these appellants, was testified to by Baber, and was directly in issue. A failure to report it in her 1954 and 1955 income tax returns would be tantamount to a statement under oath that she had not received it. The relevancy and materiality of the question on cross-examination are clear. The sustaining of the objection was error, and as the jury found specially for Baber in the precise amount claimed, with this relevant and material evidence excluded, the error was prejudicial. Our disposition of the appeal growing out of this error appears below.

(2) Ward assigns the foregoing and three additional errors. On direct examination of plaintiff Ben Baber counsel asked: "Q. Did you have any conversation with the defendant, Mrs. Ward? A. That was very short. I went to get her name and her insurance company so I could fill in my report." Ward immediately moved for a mistrial, which was denied. Ward reiterates many times in her opening and reply briefs that error lies in the assertion before the jury "that she carried insurance." Ward and Baber argued at great length, and with citation of many cases, the effect upon this issue of questions as to "the responsiveness" of the answer, the "inadvertence" of the statement, the presence or absence

of "purpose" in bringing the information before the jury, the laying of the "fault" at the proper door, and allied considerations. However, the answer quoted above cannot be characterized as a statement or inference that Ward was covered by insurance. She either was or she was not. Ben Baber did not know. So far as the evidence indicates he knew nothing about Ward or her affairs. When he concluded his statement, the jury knew precisely what it had known in the first place—no more, no less. Ward either (1) had insurance or (2) she did not. Such situation, in combination with the court's finding that the question was not deliberately asked with intent to bring the fact before the jury, and that the answer was entirely unexpected and unsolicited, leads us to conclude that there was no error in denying the motion for mistrial.

(3) Error is assigned by Ward in permitting Ben Baber to testify to a conversation between him and Neil Ward out of the presence of defendant Ward. The question was propounded by counsel for defendants Henry and Mercury who were interested in demonstrating that the negligence, if any, that was the cause of the accident, was that of Ward in stopping her car on the highway. When inquiry as to the conversation was made, it was objected to on the ground that no proper foundation had been made, because of the absence of the other parties, and that as to them the conversation would be hearsay. The court admitted the testimony as that of the res gestae over counsel's objection that it was too remote. The witness testified: "* * * [Neil Ward] voluntarily told me that the lady in the front car was his wife and I asked him—I said, 'Well, what in the world did she stop in the middle of the highway for?' and he said, 'She was looking for me' and so when she found him she stopped."

We devote our consideration of this assignment, not to the question of whether the admission of the testimony was error, but rather to the question whether it was prejudicial.

The point of the prejudice assigned is that Mrs. Ward testified that she slowed up, then she heard the crash behind her and then stopped her car, and that Ben Baber's testimony was a hearsay impeachment of Mrs. Ward's statement that she had only slowed up prior to the collision. Ben Baber had already testified that it looked to him as if Mrs. Ward's car was stopped. It may be that the jury could have understood from his testimony as to his conversation with Mr. Ward that the latter stated that Mrs. Ward had stated that she had stopped her car. But we see no prejudice in the situation. In the jury's finding of negligence against Mrs. Ward, as well as against Henry and Mercury, there would appear to be little distinction between Mrs. Ward's slowing and Mrs. Ward's stopping. There certainly would be little or no distinction between her coming almost to a stop and coming completely to a stop. The accident could as well have happened as the result of almost coming to a stop as well as coming to a complete stop. The car ahead of Ben Baber had stopped whether as a result of Mrs. Ward's slowing or stopping or coming almost to a stop. In either event it would have been Mrs. Ward's conduct which had placed the Baber car in its vulnerable position. Ben Baber had been unable to observe her brake lights as the second car was between her and Ben Baber's car. He did see the brake lights go on upon such second car and he was able to stop within a car length of such second car when he was immediately struck from behind by Henry. Under these circumstances it is difficult to find prejudice in Ben Baber's testimony of the conversation with Mr. Ward, assuming that its admission was error. We conclude that the assignment in support of Ward's demand for reversal or new trial is without merit.

(4) Ward next contends that the judgment against her should be reversed because of insufficient evidence showing that any conduct on her part was the proximate cause of injuries to the plaintiffs; that any negligence on her part in stopping or slowing her car had already been acted upon by all parties involved; that all vehicles had come to rest without incident when Henry, driving

the Mercury car, recklessly drove into the Baber car causing all the damages which were suffered and thus that Henry's acts constituted the sole proximate cause of the accident. Ward concedes that under such circumstances each case must stand or fall on its own particular facts, and both parties argue the question of the foreseeability by Ward of the danger from another car approaching from the rear. To this end the parties discuss at length questions of the nature of the highway, visibility, traffic, etc. The answer to all this is that these factors involve factual issues whose determination was essentially within the province of the jury, and with which this court will not interfere. We must reject this assignment of error.

(5) Our main difficulty lies with the matter of disposing of the appeal in view of the court's error as found in division (1) of this opinion. As to the issue of earnings and its impact upon the jury resulting in a finding of $2,520 damages for loss of earnings, the evidence was clearly material and its rejection clearly prejudicial. A new trial thus becomes necessary.

Baber contends that the prejudice should be recognized to be limited to the issue of earnings alone. Appellant Ward contends, however, that the prejudice extends to the general verdict as well; that had the question been answered she *might* have been able to use that answer as an impeachment of the witness with reference to her testimony of general damages. This might be so if we are compelled to assume a negative answer to the question. But neither Ward nor the court may indulge this presumption. The answer remains unknown. Absent any showing that the answer would have tended to establish the fact that plaintiff had testified falsely, the relevance of the inquiry to the issue of general damages has not been established and, by the same token, it has not been established that the ruling was prejudicial entitling Ward to a new trial upon such issue. It would not appear to be in the interests of justice or sound administration of justice to remand the matter for a new trial of the issue of general damages in order to permit Ward to

ascertain whether she is in position to impeach the credibility of Mrs. Baber. Ward had many months before trial to effect discovery. She was indeed under no compulsion to utilize discovery proceedings, but we feel that her failure to do so precludes her from asking this court to assume that such discovery would have established any fact in any particular fashion. "[U]nless there is no room for doubt as to what the testimony of the witness would in all probability have been [,]" the exclusion of the evidence will not warrant a new trial. Rummels v. Illinois Cent. R. Co. (Mo.App.), 15 S.W.2d 363. In Simonson v. Huff, 124 Wash. 549, 215 P. 49, appellant had been erroneously foreclosed from inquiring on cross-examination, for the purpose of impeachment, as to the nature of the business in which respondent had been engaged for many years in Yakima, after respondent had testified that he had been so engaged. The court said, citing authorities, "This court will not reverse the cause and put the parties to the burden of a new trial on the mere chance that an answer favorable to the respondents would have been returned." The court's error in excluding the testimony will therefore not be presumed to extend beyond the particular issue to which the excluded testimony was material, that is, the issue of lost wages.

For these reasons we conclude that as an alternative to new trial a remittitur damnum relating to that portion of the verdict attributable to loss of earnings would be appropriate.

Reversed and remanded for new trial; provided, however, that if respondent Dolores Baber file herein within 10 days from date of receipt of a copy of this opinion a remittitur damnum to the extent of $2,520, the judgment, modified to the extent of such remission, will be affirmed. Respondents are allowed their costs in this court.

MERRILL, C. J., and McNAMEE, J., concur.