Mary Catherine SLATINSKY, Executrix of the Estate of John S. Slatinsky, Deceased, Appellant,

v.

Harold F. BAILEY, Appellee.

No. 17505.

United States Court of Appeals
Eighth Circuit.

April 16, 1964.

---

Emmet Tinley, Council Bluffs, Iowa, made argument and filed brief with Robert M. Stuart, of Ross, Johnson, Stuart, Tinley & Peters, Council Bluffs, Iowa, and George B. Boland, of Wear, Boland, Mullin & Walsh, Omaha, Neb., for appellant.

Philip J. Willson, Council Bluffs, Iowa, made argument for the appellee and Raymond A. Smith, Council Bluffs, Iowa, was with him on the brief.

Before VAN OOSTERHOUT, RIDGE and MEHAFFY, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

This is an appeal by Mary Catherine Slatinsky, Executrix of the Estate of John S. Slatinsky, deceased, from judgment entered against her upon a jury verdict in a diversity action she brought against Harold F. Bailey for the wrongful death of John S. Slatinsky in an automobile accident. The accident occurred on Iowa primary Highway 92 a short distance east of Council Bluffs about 7 a. m. on July 5, 1962. The paved highway at the point of collision consists of two main lanes, each twelve feet wide, and two passing lanes or creeper lanes, each ten feet wide. The west bound creeper lane commences to narrow at the point of the accident and terminates some distance to the west. The day was clear, the road was straight and dry, and approaching cars could see each other for a considerable distance.

Immediately prior to the collision, Mr. Slatinsky was driving his car in an easterly direction on the highway while defendant's car, driven by his son, was traveling in a westerly direction. The automobiles collided; the drivers of both cars died as a result of injuries received.

Dispute exists as to which automobile was on the wrong side of the road at the time of the collision. The jury found for the defendant. Judgment was en-

tered upon such verdict. This timely appeal followed.

Plaintiff urges that she is entitled to a reversal for the following reasons:

I. The court erred in failing to submit her speed specification of negligence to the jury.

II. The court erred in overruling plaintiff's objections to the cross-examination of witness Radeke and in permitting defendant's counsel to play a tape recording of a prior statement made by such witness and in giving an impeachment instruction.

I.

The court submitted three specifications of negligence charged by the plaintiff to the jury, to wit, failure to keep a lookout, failure to control the automobile and failure to yield one-half the traveled portion of the highway. The court refused plaintiff's requested instruction submitting a pleaded speed specification to the jury, stating:

"The Court refuses to submit that, because the uncontradicted testimony in this record is that these vehicles were travelling in the neighborhood of 45 to 55 miles an hour. There is no speed limitation in this area. And there just is absolutely no ground for submitting speed as far as either side is concerned. And the matter of control is being submitted, which does somewhat cover this matter of driving a car and having it under control, and has some effect upon it. But I see no reason for submitting speed, because there is absolutely no evidence here that either vehicle was in either way driving at an excessive speed under the circumstances then and there existing."

We agree with the foregoing statement. Four disinterested witnesses in a car which had followed defendant's car for some five miles immediately prior to the collision fixed the maximum speed of defendant's car at 50 to 60 miles per hour. There is no direct testimony to the contrary.

As plaintiff states, the Iowa court has recognized that speed can be determined under appropriate circumstances by physical facts and courts are not bound to accept at face value estimates of speed. Such rule is particularly applicable with respect to estimates made by interested witnesses. See Hutchins v. La Barre, 242 Iowa 515, 47 N.W.2d 269, 275; Davidson v. Vast, 233 Iowa 534, 10 N.W.2d 12, 15.

In Davidson, defendant had placed his speed at 7½ miles per hour. In La Barre, the defendant fixed his speed at 10 to 20 miles per hour. In each of those cases the court found there was reason to believe from the physical facts and the nature of the damages that the speeds were substantially higher than estimated. In our present case, it is not unreasonable to believe that the damages here shown could be caused by vehicles approaching each other at a rate of speed approximately 60 miles per hour.

Iowa cases support plaintiff's contention that the 70 miles per hour speed limit operative with respect to the road here involved prescribes only a minimum standard of care and that conduct meeting such standard may under some circumstances be negligent. I.C.A. § 321.-285 includes the provision that motor vehicles shall be driven "at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway and of any other conditions then existing."

In Hackman v. Beckwith, 245 Iowa 791, 64 N.W.2d 275, relied upon by the plaintiff, the court finds that the existence of a curve at the viaduct, the rise of the approach to the viaduct, the weight of the truck and other elements were entitled to consideration in determining whether the speed was excessive under the circumstances existing and that the court did not err in refusing to withdraw the speed specification from the jury.

In Law v. Hemmingsen, 249 Iowa 820, 89 N.W.2d 386, the court calls attention to a narrow 18-foot roadway, falling snow, darkness, icy pavement, obscured center line and edges, a truck 7 feet, 10 inches wide, a curve at the point of collision which was not banked, and other elements, and states:

"In view of the dangerous driving conditions referred to in Division III the jury could properly find defendant-driver was negligent in failing to reduce his speed at the time of the collision. Whether negligence in this respect or in the manner of lookout proximately caused the collision was also a jury question." 89 N.W.2d 386, 394.

No similar existing circumstances calling for a reduced speed are present here. The only circumstance plaintiff urges is that the west-bound creeper lane commences to terminate. There is no evidence of cars trying to pass nor is any convincing reason set out why the highway at the time and place of the accident was not suitable for normal country driving.

The Supreme Court of Iowa has frequently held that a specification of negligence which could not possibly be a proximate cause of the injury should not be submitted to the jury. Jacobsen v. Gamber, 249 Iowa 99, 86 N.W.2d 147, 152–153; Brewer v. Johnson, 247 Iowa 483, 72 N.W.2d 556, 558; Ehrhardt v. Ruan Transport Corp., 245 Iowa 193, 61 N.W.2d 696, 700.

As stated in Brewer v. Johnson, supra, "Negligence, in and of itself, is irrelevant in the absence of some causal connection with the injury."

It is apparent that this unfortunate accident was caused by one driver or the other being on the wrong side of the road. Each party contends his driver was on his right side of the road at the time of the collision. Neither party has attempted to offer any evidence of sudden emergency or legal excuse for being upon the wrong side of the road. Upon this record, there is no substantial evidence to support a finding that the speed of either vehicle played any part in causing the accident. The court committed no error in refusing to submit the speed specification. Moreover, the control instruc-

tion submitted to the jury was broad enough to give the plaintiff any benefit that she could hope to gain by the requested speed instruction. Plaintiff has failed to show any prejudice resulting from the court's refusal to give the requested speed instruction.

## II.

Plaintiff asserts the court erred in overruling her objections to the use of a dictaphone tape in cross-examination of the plaintiff's witness Ronald R. Radeke. Radeke, who was driving an automobile following Slatinsky's automobile, initially testified at the trial that the said automobile prior to the collision was traveling in the main line of travel for east-bound traffic and was at all times on its side of the highway. Mr. Radeke had given a statement to a representative of the defendant on the day following the accident. Such statement was taken by dictaphone and later a typewritten transcript of the tape was made, which transcript was not signed or approved by the witness. In the course of the cross-examination the typewritten transcript was produced and shown to the witness. The following is illustrative of the cross-examination based on the transcript:

> " 'Question: You wouldn't know then whether the man was in his lane or out of his lane?' 'Answer: No, I wouldn't.' Do you recall that answer?
>
> "A. Recall it? No, I see it there. I see I have said it.
>
> "Q. And is that a fact?
>
> "A. I feel like he was in my lane.
>
> "Q. And this question and this answer: 'Question: Okay, you couldn't say he was in it and you couldn't say he was out of it, is that correct?' 'Answer: That's correct.' Do you recall that question and that answer?
>
> "A. I don't recall it. I see it there.
>
> "Q. You don't recall making the answer?

> "A. Well, I don't recall the exact things I said then."

Later Mr. Radeke was recalled for further cross-examination. His statement, which covers two separate tapes, was played to him in open court in the presence of the jury. Defendant's counsel as a basis for playing the tapes, stated:

> "The witness yesterday was unable to recall whether or not he made some of the statements that were read to him. We felt that we were obligated to confront him with the recording that was taken so that he could check that against the transcript, and then we felt there was further obligation to lay a foundation and ask him if that refreshed his recollection, and whether he would admit or deny making the statements; whether the statements made were true or not.
>
> \*　　\*　　\*　　\*　　\*
>
> "[I]t is our position that we are not offering it yet as substantive evidence. We are merely completing our obligation to lay the foundation before we even attempt any impeachment. \* \* \*"

Plaintiff objected to the playing of the recording on the following grounds:

> "The use of the record and proposed cross-examination is not proper cross-examination. It's incompetent, immaterial and irrelevant. There has been no proper and sufficient foundation laid. And it assumes matters here that have not been established by the evidence."

The court observed that the recording was being used to refresh the witness's memory and also stated:

> "We will proceed with the playing of the record. If the witness identifies his voice, we will proceed with it. If not, the Court will not admit it. There will have to be a foundation laid.
>
> \*　　\*　　\*　　\*　　\*
>
> "I think in fairness to the defendant here, counsel for the defendant in-

ferred that this was a typewritten material when this material was shown to this witness during the examination. You remember—you recall, Mr. Tinley, you sort of protested that it was at the time."

After portions of each tape had been played, the witness was asked if he recognized his voice. He replied in substance that he did not consider it a good reproduction but that he really did not doubt that it was his voice.

After the recording was heard by the witness, the record includes the following questions and answers:

"Q. (By Mr. Willson) Now that you have listened to the Dictaphone belt and compared it with the transcript in your hand, let me ask you now if you recall, the evening following this accident, saying: 'In regard to who was over which line, I couldn't tell, because when we saw it —when we became aware actually of the accident, the cars were almost off the pavement.'

\* \* \* \*. \*

"A. The exact words you are asking, remember, were over a year ago. I remember making statements like this."

\* \* \* \* \*

"Q. Then do you recall the following question and this answer: 'Q. Okay, you couldn't say he was in it and you couldn't say he was out of it; is that correct?' 'A. That's correct.'

"I'm asking you now, do you recall making that statement?

"A. Yes.

"Q. And was that correct?

"A. Yes, insofar as I know.

"Q. And with regard to the car that was coming towards your direction of traffic, the Ford, do you recall being asked: 'Q. You wouldn't know as to whether he was on his side of the road or not?' 'A. No, I would not.' Do you recall that question and answer?

"A. Yes.

"Q. And was that correct?

"A. Yes."

Upon the basis of the facts heretofore set out, we believe that it was proper for the court to permit the defendant to use the recording to lay the foundation for impeachment. Clearly the replay disclosed statements made upon the material issue of the side of the road where the accident occurred which were inconsistent with the original testimony given at the trial. Plaintiff's objection to the typewritten transcript and the witness's inability to recollect some of his earlier testimony justified the use of the tape recording. While the recording was not as perfect as might be desirable, the court, on the basis of the witness's statement that he had no doubt that it was a correct recording, was warranted in permitting its use for refreshing the witness's memory and for impeachment foundation. The witness, after hearing the replay, admitted that he had previously stated that he did not know which driver was on the wrong side of the road and that such statement was correct. Hence, there was no occasion to pursue the impeachment further and no attempt was made to offer the tape in evidence.

Plaintiff urges that it was error to let the jury hear the recording prior to its admission in evidence. The Supreme Court of Iowa in State v. Triplett, 248 Iowa 339, 79 N.W.2d 391, 397, followed State v. Gensmer, 235 Minn. 72, 51 N.W.2d 680, where it was held that a statement taken by a recording device is "the modern substitute for a statement in longhand. It accomplishes the same purpose, but more expeditiously and more correctly."

Since defendant did not attempt to have the tape admitted in evidence, we are not directly concerned with the foundation required for its introduction. Such requirements are well set out in United States v. McKeever, S.D.N.Y., 169 F.Supp. 426, 430. Although this case was reversed upon other grounds,

the Second Circuit upon appeal approved the manner of handling the tape recording. United States v. McKeever, 2 Cir., 271 F.2d 669, 675.

McKeever also covers the manner in which the tape replay should be handled in circumstances such as this. In McKeever, the court permitted the recording to be played before the jury over earphones with the sound audible only to the witness. In approving this method, the Court of Appeals states:

> "We find no error in the court's rulings with respect to the tape. Documents shown to a witness for the purpose of reviving his recollection may not be read or shown to the jury, since the documents themselves are not evidence and have no independent evidentiary value. * * * Nor should the fact that a tape recording rather than a written document was involved affect the result, since a recording played over earphones to the witness bears a close analogy to a document shown only to the witness." 271 F.2d 669, 675.

McKeever further held that the trial court properly denied the defendants the right to play the recording before the jury because it contained many self-serving statements by the defendant which would have allowed the jury to consider statements of a party not sworn or subject to cross-examination.

In Breeding v. Reed, 253 Iowa 129, 110 N.W.2d 552, plaintiff, when surprised by the fact that the testimony of his witness conflicted with a previous statement made by the witness, was allowed to refresh the memory of the witness by playing a recording of the statement in chambers in the presence of counsel. The court cited McKeever and agreed that the recording should not be played before the jury. The court further held that upon return to the court room "it is proper that the various inconsistent statements be called to the attention of the witness for the purposes recognized by the rule." 110 N.W.2d 552, 556.

■ We recognize that a trial court has a broad discretion with regard to the scope of cross-examination. Southern Farm Bureau Cas. Ins. Co. v. Mitchell, 8 Cir., 312 F.2d 485, 500.

■ Inasmuch as the recorded statement had not been fully identified or received in evidence, we believe that it would be preferable not to permit the jury to hear the recording and to handle this situation in the manner suggested by McKeever or Breeding.

■ The burden is upon an appellant to demonstrate prejudice as well as error. Rule 61, Fed.R.Civ.P.; Palmer v. Hoffman, 318 U.S. 109, 116, 63 S.Ct. 477, 87 L.Ed. 645; Railway Express Agency, Inc. v. Epperson, 8 Cir., 240 F.2d 189, 194. The recording was heard by the trial court. The trial court overruled plaintiff's motion for a new trial which included asserted error in permitting the jury to hear the tape. We find nothing in the printed record with respect to the contents of the tape nor is the alleged typewritten transcript of the tape which was used in cross-examination in the record except for what is disclosed by the questions properly put to the witness for impeachment foundation. Likely much of the material portion of the tape was covered by the foundation questions. The cross-examination developed that the witness had made statements inconsistent to his original testimony at the trial. After hearing the recording, the witness admitted making the prior statement to the effect that he could not say what side of the road either vehicle occupied immediately prior to the collision and that such statement was true. Such testimony bore upon the vital issue in the case.

■ Plaintiff has completely failed to demonstrate that the tape replay contained any material or statement not properly admissible which prejudicially affected her rights. While the affidavit of counsel attached to the motion for new trial declares the recording was audible to the jury and that voices other than

that of the witness's were heard, nothing is disclosed as to the subject matter of such statements or with respect to the persons making them. It is to be anticipated that someone would direct questions to the witness. Upon the record before us, we hold that the plaintiff has not met the burden imposed upon her to show that the playing of the tape before the jury caused any prejudice to her such as to entitle her to a reversal.

Plaintiff's objection to the impeachment instruction consists of a single sentence in her brief, reading: "Finally, plaintiff submits that there was no impeachment of Ronald R. Radeke and for that reason it was error for the court to give Instruction XVIII." Such contention lacks merit. No objection is made to the form of the instruction.

Our examination of the record satisfies us that the plaintiff has had in all respects a fair trial. Plaintiff has failed to show that the court committed any prejudicial error. The judgment is affirmed.