**STATE HIGHWAY COMMISSION of Wyoming, Appellant (Plaintiff below),**

v.

**Esther M. McNIFF, for herself and as sole heir, devisee, legatee, and executrix of the Estate of Raphael A. McNiff, deceased, Appellee (Defendant below).**

**No. 3207.**

Supreme Court of Wyoming.

Aug. 28, 1964.

John F. Raper, Atty. Gen., Glenn A. Williams, Asst. Deputy Atty. Gen., and Dean W. Clark, Sp. Asst. Atty. Gen., Cheyenne, for appellant.

Hickey, Rooney & Walton, John J. Rooney, and J. J. Hickey, Cheyenne, for appellee.

Before PARKER, C. J., and HARNSBERGER, GRAY, and McINTYRE, JJ.

Mr. Chief Justice PARKER delivered the opinion of the court.

The State Highway Commission of Wyoming, acting under § 1–754, et seq., W. S.1957, filed a petition for condemnation of 5.6 acres of the McNiffs' unimproved land immediately west of the city limits of Rawlins. Three court-appointed appraisers valued the land at $22,620, whereupon the commission demanded a jury trial on the issue of the amount to be paid.

Following the trial, the jury returned an award of $18,750, from the court's confirmation of which the present appeal is taken upon two grounds: (1) The court erred in admitting evidence of sales of property which were not comparable to that for which compensation was sought in that the "comparable" property was within the city and subdivided, while that taken was outside the city and was acreage, and there was no showing of a probable demand for the property taken; (2) The verdict was not sustained by sufficient evidence and was contrary to law.

Except for some statements by Mrs. McNiff, the evidence concerning value was established principally by two purported ex-

perts, George M. Allen, a real estate and insurance broker, and Douglas M. Dinsmore, an officer and manager of a local savings and loan association. Allen said that he bought, sold, and negotiated for real estate in the vicinity, had exchanged listings, talked with other persons regarding values, and had often appraised property. Dinsmore said that he knew market values in the vicinity, that his organization made approximately 80 percent of all real estate loans within the Rawlins area; that he followed the transactions in the county clerk's records; and that he talked to real estate dealers and other lenders and bankers concerning these matters. In establishing the valuations of the property sought to be condemned, they said they had considered it for the highest and best use and gave figures which were essentially the same. The "comparables" of the McNiff witnesses were properties within the limits of the city and its platted portions, being relatively level and having available various city services, while that in controversy was immediately outside the city limits irregular in surface, and having water and septic tank for sewage disposal but not city services for either of these.

Upon the basis of the difference in the type of property used as "comparables" and that sought to be evaluated, counsel for the State objected to the testimony of the purported experts and later, after evidence had been taken, moved to strike, contending then as now that the properties were so dissimilar that the court erred in permitting the testimony.

Analysis of the briefs and arguments discloses that there is no great difference in the views of the litigants as to the law, but rather as to its applicability. Appellant recognizes that the court has a wide discretion as to whether property is comparable but asserts that in the present instance the difference in the "comparables" and the McNiff property was so great that the use of the other sales could not aid the jury in determining the value of appellee's property. Counsel on both sides rely principally upon Nichols, Eminent Domain (3 ed.), but appellant emphasizes the following statement in the fifth volume at p. 439:

> " * * * Thus, it must first be demonstrated to the satisfaction of the court that the property involved in such sale is sufficiently similar and proximate to the property in litigation as to be of utility in reflecting the market value of the latter."

This statement is unchallenged but the quoted portion is not fully meaningful out of context because the authority continues, pp. 440–442:

> " * * * Obviously, no two properties can be exactly alike, and no general rule can be laid down regarding the degree of similarity that must exist to make such evidence admissible. It must necessarily vary with the circumstances of each particular case. Whether the properties are sufficiently similar to have some bearing on the value under consideration, and to be of any aid to the jury, must necessarily rest largely in the sound discretion of the trial court, which will not be interfered with unless abused. * * * "

In the section next preceding that which appellant quotes, it is stated that the evidence of sales of comparable properties may under proper circumstances be offered under three conditions: (a) as independent substantive evidence of the value of the property, (b) as giving an account of the factual basis upon which the opinion is founded, and (c) in cross-examination to affect the weight of the opinion.

It is uncontroverted that there was no recent sale of property in the vicinity of the City of Rawlins that was identical to that sought to be taken in the eminent domain proceeding. Accordingly it follows that there were available only two methods—or a combination of the two—by which the property could be evaluated, either by lay or expert witnesses: the opinions of persons familiar generally with values of property in the entire area or extrapolations by using,

with proper adjustments, the prices of properties which were somewhat similar.

An analysis of the exchange between counsel and witnesses fairly indicates that the former of these two methods was here utilized, but even assuming that the latter method only was employed, nothing is presented to us to show that the court abused its discretion. No general rule can be laid down governing the degree of similarity which must exist between properties sold and that condemned to make evidence of sales admissible, and the propriety of receiving such evidence must be determined by the trial judge within the proper limits of his discretion. State, by and through its Engineering Comm. v. Peek, 1 Utah 2d 263, 265 P.2d 630, 637; City of Chicago v. Vaccaro, 408 Ill. 587, 97 N.E.2d 766, 773.

█ Adverting then to the second ground of the appeal, as we view the cause, there was substantial evidence presented to the jury upon which it could have based its verdict. This being so, it is unnecessary that we pass upon appellee's contention that the sufficiency of the evidence is not reversible on appeal unless the party complaining has presented to the trial court a motion for a directed verdict.

Affirmed.