**STATE HIGHWAY COMMISSION OF WYOMING, Appellant (Plaintiff below),**

v.

**JOE MILLER LAND COMPANY, Appellee (Defendant below).**

No. 3783.

Supreme Court of Wyoming.

April 3, 1970.

James E. Barrett, Atty. Gen., Glenn A. Williams, Special Asst. Atty. Gen., James D. Douglass, Special Asst. Atty. Gen., Cheyenne, for appellant.

Alfred M. Pence, Laramie, for appellee.

Before GRAY, C. J., and McINTYRE, PARKER, and McEWAN, JJ.

Mr. Chief Justice GRAY delivered the opinion of the court.

Joe Miller Land Company, defendant below, was the owner of certain ranch lands located in Albany and Carbon Counties, and the State Highway Commission of Wyoming brought an action to acquire title by condemnation of some 500 acres of such lands for right-of-way and related purposes and for the construction of a segment of Interstate Highway 80. The taking and the application of the commission for immediate possession of the lands were not resisted but agreement was not reached as to the amount of compensation to be paid defendant for the taking, and thereupon Albert C. Irene, Milton Bennett, and John H. Bell were appointed commissioners to assess and determine such compensation. Thereafter the commissioners filed their report fixing the amount in the sum of $199,295 and the commission, being dissatisfied with the award, demanded a trial by jury of such matter. Prior to trial the parties by stipulation agreed that the value of the land taken for right-of-way, together with the value of improvements destroyed within the right-of-way, came to a total of $22,848.75. Thus the only issue to be determined by the jury was the amount of damages, if any, inflicted upon the remaining portions of the defendant's properties, commonly referred to as severance damages. The jury by its verdict fixed the amount in the

sum of $190,000. Judgment was entered by the court confirming the verdict of the jury and this appeal by the commission followed.

The only question before us relates to the exclusion by the trial court of certain evidence proffered by the commission, which for purposes of avoiding confusion will be more fully discussed hereafter.

By way of background to the question involved, the record discloses that the subject ranch, known as the Miller Ranch, was located some 15 miles northwest of the City of Laramie; extended on north and west for several miles; and contained approximately 100,000 acres of grazing land, meadow land, and irrigated land, 81,000 acres of which were deeded lands and approximately 19,000 acres leased lands. Although made up of separately described ranch units acquired over the years, the properties were nevertheless used by the defendant as one operating unit with freedom of movement throughout for its livestock and equipment to its different facilities. The lands here taken cut through the ranch in a northwesterly southeasterly direction for a distance of approximately 12 miles. However, the construction of the highway would separate and interfere with the properties and operation of the ranch for some 26 miles inasmuch as some 38,000 acres of the ranch would then lie on the southwest side of the highway and 62,000 acres on the northeast side of the highway. To alleviate the situation the plans and specifications of the four-lane highway called for the construction of several structures beneath the traveled portion to be used for the movement of vehicles, machinery, and livestock from one portion of the ranch to the other portion. Nevertheless, there was an abundance of evidence favorable to the defendant tending to show that several of the structures, particularly in the wintertime, were inadequate for the purposes intended, with the result that the value of the ranch for its highest and best use as a unitized cattle ranching property was substantially diminished. In this con-

nection there is great divergence in the estimates of the witnesses of the parties as to the amount of the severance damages. Each of the commissioners when called by the defendant as a witness in the trial fixed the severance damages in the sum of $160,000. The defendant's expert witness on valuation, Mr. Max Arnold, fixed the severance damages in the amount of $249,190. The commission's expert Mr. Merrill Dunham fixed the amount in the sum of $22,230, and its expert Mr. Richard L. Goodman fixed such damages in the amount of $25,623.50.

The claim of the commission that the trial court committed prejudicial error in excluding certain evidence proffered by the commission involves two distinct incidents, and although counsel for the commission in their brief and in their argument have intermingled the matters, we deem it necessary in order to avoid confusion to discuss each incident separately.

The first incident occurred in the following manner: During the course of the trial it was apparently made known to the trial judge that the commission intended calling as a witness Mr. Vernon Conger for the purpose of testifying to a certain sale made in the year 1965 by the Terry Land and Livestock Company of ranch lands located south of Cheyenne, Wyoming, to a grazing association of which the witness was a member of the board of directors and that there might be some question as to the admissibility of testimony concerning such sale. In order to settle the matter the trial judge requested that the commission make an offer of proof, which was done, and in addition to including the foregoing information the offer of proof was to the effect that "this sale" encompassed some six separate ranches used before the date of purchase as a year-round cattle ranch; that it was suitable for that purpose; that it was, however, to be used by the purchaser as a summer operation; that the final purchase price for all six ranches was approximately $690 per animal unit, which "was considered to be the market value for

all ranches"; that four of such ranches had a railroad "running through it"; that one ranch, in addition to a railroad, was crossed by Interstate 25; that one ranch had "no highway or railway on it"; and that the purpose of Conger's testimony was "to show that in this sale at least, * * * the * * * Soapstone Grazing Ranch, which has no railroad or highway through it, did not bring more than did any of the other ranches on which these encumbrances run"; and that the animal unit price was not affected. Opposing counsel objected to the offer on the grounds that no proper foundation had been laid; that it was not demonstrated that such property was comparable to the subject property; and that it did not tend to prove or disprove any issue and was therefore incompetent and immaterial. The objection was sustained. Following such ruling the commission then made a further offer of proof to the effect that its expert witness Goodman when called would also testify "in a similar vein" for the purpose of showing "that a willing buyer today has at least indicated by these sales paid the same sales price for land that had a highway through it as he did for land that does not have a highway running through it." Opposing counsel again objected on the grounds previously stated and the objection was sustained.

Sifting through the several "intermingled" points of the arguments advanced by the commission in support of its several claims of error, the points that would appear to have some application to the incident set forth above, as disclosed by the official transcript of the trial proceedings, are in substance that the proffered evidence was relevant and material to the commission's theory of the case; that the evidence was limited to the special purpose stated in the offers and admissible as such; and that the objections to the offer were insufficient as a basis for the ruling made by the trial judge. We find no merit in any of the contentions.

█ Initially, with respect to admissibility of the proffered evidence on the basis that it was relevant and material to the commission's "theory of the case," it is difficult to grasp the force of the argument in support thereof. As disclosed above, both parties submitted the case on the theory that severance damages were inflicted upon the defendant as the result of the taking. In addition, the commission throughout its brief emphasizes that the evidence was not offered "as a comparable sale per se" as that term is generally understood in eminent domain proceedings but for the special purpose of showing that "other ranch property, upon which ran highways and railroads, had sold equally well as unencumbered ranches." Apparently the purport of the argument is that the commission had a "theory" that such evidence was "a factor" relevant to the ultimate issue of the extent to which the value of the defendant's property had been diminished by the taking. Be that as it may, perhaps the distinction, in view of the commission's position, is not particularly important except to point out that the admissibility of the proffered evidence is not to be tested under the somewhat liberal rules applicable to the accepted use of "comparables" in connection with expert opinion of the "before" and "after" value of the subject property.[1] It is to be tested under rules applicable to independent substantive evidence of a "factor" claimed to be relevant and material to "after value."

█ For purposes here we will assume that the offers were sufficiently explicit to advise the trial judge "of the nature and character of the offered evidence," Jones v. Clark, Wyo., 418 P.2d 792, 798. Nevertheless, as was also therein recognized, 418 P.2d at 799, it is fundamental that the relevancy and materiality

---

1. Illustrative of such use and rules are State Highway Commission v. McNiff, Wyo., 395 P.2d 29; State Highway Commission v. Newton, Wyo., 395 P.2d 606; and Routh v. State Highway Commission, Wyo., 402 P.2d 706.

of the proffered evidence must be apparent at the time the offer is made. See also 88 C.J.S. Trial § 80, p. 183. Even when evidence of this nature is offered as a "comparable sale," a foundation must be laid as to the degree of similarity or comparability of the property involved in the sale with that of the property being taken, and in determining admissibility of the evidence offered the trial court exercises a broad discretion. Routh v. State Highway Commission, supra, 402 P.2d at 709–710. Certainly it would be anomalous to hold that a more liberal view would be taken when a sale of other property is offered for a special purpose under some other "theory."[2] Particularly apropos to the question before us is the view taken by the court of appeal in People By and Through Department of Public Works v. Princess Park Estates, 270 Cal.App.2d 876, 76 Cal.Rptr. 120, 126, wherein it is said:

> " * * * The trial court may, in the sound exercise of its discretion, exclude evidence if its probative value is substantially outweighed by the probability that its admission will necessitate undue consumption of time, create substantial danger of undue prejudice, confuse the issues or mislead the jury. * * * "

If such be the case, the trial court may, under the rationale expressed in Barber v. State Highway Commission, 80 Wyo. 340, 342 P.2d 723, 726–727, exclude such evidence even though no objection is voiced by opposing counsel.

When the offers here made are scrutinized in the light of foregoing concepts it is obvious that little or no foundation was laid to establish the admissibility of the proffered evidence. In addition, the trial court, on the basis of the facts disclosed by the offers, was warranted in concluding that the Terry Ranch sale, even though composed of separate units, was a "package deal" so to speak, and the considered effect, if any, of the presence of a railroad or highway, or both, on particular units of the property as a whole was a matter of speculation. Other inadequacies of the offers of proof could be pointed out, but in final analysis it is not demonstrated to us that the evidence proffered for the sole purpose of establishing that the sale of ranch property encumbered by a highway running through it and lying some 75 miles distant from the subject property was of such probative force on the issue of "after value" that the trial court committed prejudicial error in excluding it.

The second incident occurred in connection with the direct examination of the commission's witness Mr. Merrill Dunham, a real estate broker residing in Glenrock, Wyoming. No question was raised concerning the qualifications of this witness to express an opinion as to the "before" and "after" value of the defendant's ranch property, and in relating the several matters that had been taken into consideration as affecting the value of defendant's property the witness said there had been several sales of ranch property in the general area involved which he had investigated. As a result of the investigation, five such sales were selected as "comparables" and were utilized for purposes of his opinion.

One of these sales was made by Mr. R. R. Nelson to the Platte County Grazing Association. At the time the initial ruling of the trial court was made excluding the use of such sale as a "comparable" Dunham had testified that he had previously made several trips to the Miller Ranch for purposes of making an appraisal requested by the commission and was familiar with the property and the manner in which the property was used by the defendant; that he was also familiar with the Nelson property consisting of meadow land and grazing land which joined the property of the defendant and was used "in about the same type of operation" as the defendant's property; that the Nelson property was comparable to defendant's property; and that a Federal agency had furnished "financial backing" to the purchaser. It was

---

2. For an informative discussion of the subject see Annotation 12 A.L.R.3d, § 2(b), pp. 1066–1067.

at this point opposing counsel objected to going further into the details of the sale on the ground that "Federal participation in the financing of the sale makes it incomparable," and the objection was sustained. Thereupon counsel for the commission made an offer of proof in substance that Dunham would further testify that the sale was made in October 1964 at a price of $525,000 and that there were 24,516 acres involved, thus reflecting the purchase price of $21.20 per acre. The proffered testimony was also rejected upon the ground previously stated, and at the request of the trial court the commission's counsel then made a further offer of proof with respect to the "Ludlow-McCarter sale" to another grazing association and was met with the same objection and the same ruling. We need not dwell upon the Ludlow-McCarter sale, however, inasmuch as disposition of the ruling made on the Nelson sale adequately disposes of the commission's points concerning the foregoing incident.

The contentions of the commission are in substance that a sufficient foundation had been laid for use of the Nelson sale as a "comparable sale"; that the details of the sale were relevant and material; and that the fact the purchase was financed in whole or in part by a Federal agency did not make the profered testimony inadmissible.

In the first instance we think little need be said concerning the matter of foundation, relevancy and materiality of the proffered testimony. It is clear from the record that the Nelson sale was used as support for Dunham's opinion as to value of the defendant's property and not as independent substantive evidence of the value of such property. From the circumstances above set forth there is little doubt that relevancy and materiality of the testimony were apparent at the time. Concerning foundation, it is significant that opposing counsel voiced no objection to any deficiency in the general foundation laid for use of the sale in the manner stated unless, of course, the objection made

with respect to financing was so intended, which seems doubtful. Likewise the trial court in its ruling gave no indication that an insufficient foundation had been laid, and as we view it, it is most unlikely that the trial court in view of pronouncements made in the McNiff, Newton and Routh cases, supra, of its own volition would have excluded testimony as to further detail of the sale on the basis that no proper foundation had been laid. Thus the correctness of the trial court's ruling rests entirely upon the specific objection concerning Federal participation in the financing of the purchase.

Apparently the trial court in its ruling accepted the theory of defendant's counsel underlying the objection, which was brought out in argument to the trial court, that such sale was not comparable because the grazing districts were "subsidized purchasers" in that the terms with respect to time and interest were not competitive "in the market generally available to ranchers for normal ranch operation." The theory is novel and quite intriguing. We need not explore it, however, for the reason that even though it is generally known that several Federal and State agencies subsidize farmers and ranchers in many ways, that knowledge could scarcely extend to the specific terms of the contractual relationship between the agency and the grazing districts involved, and at the time the objections were made there was no testimony disclosing the facts stated by counsel in support of the objection. If these facts were as important and critical to the use of the sale as a comparable as counsel suggests, the opportunity was there for counsel by voir dire, cross-examination, or other evidence to develop those facts, State Highway Commission v. Newton, supra, Wyo., 395 P.2d at 609. As the record now stands, the assertions of counsel are unsupported by evidence. Absent any showing to the contrary, there is a presumption that the sale was an "arm's-length" transaction and not under compulsion. Epstein v. Boston

Housing Authority, 317 Mass. 297, 58 N.E. 2d 135, 138.

In addition, counsel frankly states in defendant's brief that neither of the parties could find authority "directly in point." Likewise our independent search has disclosed none, but we did touch upon the general proposition of participation by the government in the financing of the acquisition by condemnation of private property for use in the construction, maintenance, and operation of highways in the Barber case, supra, 342 P.2d at 725–726. We there said that such matter was "wholly immaterial to the issues" in the proceeding, and the rationale of that case is indeed pertinent to the proposition here. If we were to adopt a rule that testimony regarding the sale of lands shown to be sufficiently comparable to the lands involved in an eminent domain proceeding must be excluded for the sole reason that the government participated in the financing of the purchaser, we would in a large measure destroy the concept of "comparable sales" which most courts recognize as a satisfactory "tool" to aid the trier of the facts to arrive at just compensation to the owner as a result of the taking. This we refuse to do and we hold the trial court was in error in imposing such a rule.

It does not follow, however, that because of the error the judgment must be reversed and the case remanded for new trial. Rule 61, W.R.C.P., in part provides in substance that any error in the exclusion or admission of evidence must be disregarded unless we are persuaded from examination of the entire record that the trial court's ruling was inconsistent with substantial justice. See Western Transmission Corporation v. Colorado Mainline, Inc., 10 Cir., 376 F.2d 470, 474. Also, as pointed out in Robertson v. State Highway Commission, Wyo., 450 P.2d 1003, 1004, "the critical consideration is the seriousness of the error, not its occurrence," and the concept is routinely applied in eminent domain proceedings. Solution of the problem is usually dependent upon the circumstances in each particular case, 3 Barron

and Holtzoff, Federal Practice and Procedure, § 1353, p. 443 (1958). In addition, we have many times held as a general proposition that the burden is on the appellant to show wherein the error was prejudicial.

In the instant proceeding the commission has made no effort by way of authorities or cogent argument to sustain its assertion that the error was prejudicial. It has assumed that such was the fact. For such reason we would no doubt be justified in simply holding that the commission had not met its burden. However, because of what appears to be a most liberal allowance by the jury for severance damages, we think the matter merits some discussion.

In the first instance the circumstances surrounding the purpose for which "comparables" were used in this proceeding are quite unusual. In the ordinary case, as indicated above, an important purpose is to furnish criteria by which the trier of the facts might measure the sometimes extravagant opinions of the witnesses with respect to the value of the property taken. Here the jury was not called upon to determine that matter inasmuch as that value had been agreed upon and for that reason our attention must be focused upon the ultimate issue, which was the "after value" of the defendant's ranch. In submitting this issue to the jury the parties presented two separate theories by which that issue was to be resolved. It was the defendant's theory that the complexities and difficulties presented by the construction of the highway to the operation of the ranch in the manner indicated above had a substantial adverse effect upon the "after value" of the ranch as a whole. On the other hand, it was the commission's theory that the "after value" was to be measured by deducting from the "before value" the extent of the damages inflicted upon the lands in close proximity to the highway. That, of course, raised a jury question and it was for the jury to determine which of the two theories more nearly reflected an informed "guess" as to the "after value" of the ranch, and by

its verdict the jury made clear that it did not accept the theory of the commission. Thus, all that need be considered is whether or not the exclusion of the details of the two "comparables" used by the commission's witness Dunham as support for his valuation opinion, and through whom the commission's theory was first advanced, might reasonably be said to have influenced significantly the jury's rejection of the commission's theory. If the exclusionary ruling had such an effect, it necessarily would follow that the ruling was inconsistent with substantial justice. From our analysis of the entire record, however, we are unable to reach that conclusion.

At best, the ruling could only have affected the weight and probative value of Dunham's "after value" opinion, which in final analysis was also a question for the jury. In this connection, when it is considered that the witness testified freely in support of his opinion to the detail of three other "comparables" ranging in price from $20 per acre to $40.65 per acre as compared to the price of $21.20 per acre in the Nelson sale and $24.70 per acre in the Ludlow-McCarter sale and yet for purposes of his computation in arriving at his "after value" utilized an average value of approximately $34 per acre for defendant's ranch, it would seem the detail of the excluded "comparables" would have been largely cumulative. In addition, it is of interest to note that the commission's other valuation witness, Goodman, who arrived at his "after value" in keeping with the commission's theory, gave consideration to the three "comparables" about which Dunham testified; gave no consideration to the excluded "comparables"; and yet for purposes of his computation utilized an average value of $32.60 per acre for defendant's ranch. Also to be considered is the fact that the jury already had before it the testimony of the defendant's witnesses Bennett, Irene, and Bell that the average value per acre of defendant's deeded lands prior to the construction of the highway was in the sum of approximately $26.50 as compared with Dunham's figure of $34 and Goodman's figure of $32.60. With such a range in the evidence before the jury as to the "before" and "after" value per acre of the defendant's property, it is our view that the probability of the error having significantly influenced the rejection by the jury of the commission's theory on "after value" and in turn the verdict of the jury is indeed remote, and we are constrained to hold the error was not prejudicial.

Affirmed.

McINTYRE, Justice (dissenting).

All members of our court seem to agree testimony which the commission sought to elicit from Merrill Dunham had to do with the sale of lands which were shown to be sufficiently comparable to the lands involved; and that this testimony should not have been excluded.

Having so concluded, we should not I think justify the exclusion of this testimony by saying it was *harmless* error.

It is true we said in Robertson v. State Highway Commission, Wyo., 450 P.2d 1003, 1004, the critical consideration is the "seriousness of the error," not its occurrence. But this court long ago adhered to the principle that the exclusion of competent evidence is presumed to be prejudicial. Owens v. Frank, 7 Wyo. 457, 53 P. 282, 283, 75 Am.St.Rep. 932.

For more recent holdings to the effect that prejudice is to be presumed from the exclusion of competent evidence or the admitting of improper evidence, see Valley Transp. System v. Reinartz, 67 Ariz. 380, 197 P.2d 269, 271; Henry v. Baber, 75 Nev. 59, 334 P.2d 839, 840; and Hill v. Bank of San Pedro, 41 Cal.App.2d 595, 107 P.2d 399, 406. See also Morrison v. City of Butte, 150 Mont. 106, 431 P.2d 79, 83.

In Stroud v. Hansen, 48 Cal.App.2d 556, 120 P.2d 102, 104, the court said prejudicial error will not be presumed in excluding evidence unless the question to which objection has been sustained shows affirmatively that the answer would elicit proof favorable to the party making the inquiry

and that it bears upon a material and relevant issue.

We are dealing with a situation where the offer of proof did show affirmatively that the answer would elicit proof favorable to the party making inquiry. Also, it cannot and is not denied that the inquiry bore upon a material and relevant issue.

Another area of full agreement seems to be that the parties in the case before us presented two separate theories in arriving at the "after value" of defendant's ranch. The majority opinion assumes the jury rejected the commission's theory. I cannot be sure it did, however, because it seems to me we are unanimously admitting the commission was improperly cut off in the development of its theory.

Then too, it is difficult for me to join in saying the admitted error was not prejudicial because the excluded evidence would have been "cumulative." It is indeed difficult to classify the limits of cumulative evidence where the opposing side is granted unrestricted freedom to use all of its witnesses and evidence in the development of its theory. It would be like saying one side is to be limited in the number of comparables it can tell the jury about, while the other side can have as many as it pleases to influence the jury.

If exclusion of the evidence which the commission sought to offer by its witness Dunham was erroneous, as we say it was, then I would say the error was prejudicial.

### ADDENDUM

In view of the dissent, and as the writer of the majority opinion, I feel impelled briefly to express my own views upon the matters raised in order that there be no misunderstanding as to the reasons underlying our holding that the ruling excluding the detail of the two "comparables" involved, even though error, was harmless under Rule 61, W.R.C.P. In the first instance the dissent seems to overlook the fact that the commission in this appeal has relied solely on procedural errors and thus concedes that the verdict of the jury was sustained by substantial evidence and was well within the range of the evidence as to the "after value" of the defendant's property. Recalling that our Rule 61 was taken verbatim from Rule 61 of the Rules of Federal Procedure, it may not be amiss to quote from the case of Tugwell v. A. F. Klaveness & Company, 5 Cir., 320 F.2d 866, 868, certiorari denied 376 U.S. 951, 84 S.Ct. 967, 11 L.Ed.2d 970, which reads as follows:

" * * * The unsuccessful plaintiff recognizing the adequacy of the record to support the finding that the accident did not occur, seeks a reversal because of two procedural rulings each related to the receipt of evidence. '

"The difficulties of that attack are formidable. These bear emphasis at the outset since the problem is not the simple one of identifying the two incidents and then under microscopic examination ascertain whether in one way or another the rulings lack perfection. Under command of F.R.Civ.P. 61 and 28 U.S.C.A. § 2111, ours is a more substantial function which epitomizes the very nature of adjudication. We must determine whether, assuming the action under review to have been erroneous, was it really harmful to the complaining party? * * * "

In the annotation of innumerable Federal cases relating to the admission and exclusion of evidence as set forth in 28 U.S.C.A., pp. 179–198, the foregoing rationale has, with the exception of the rare case where the error was determined to be prejudicial per se, been adhered to and in no case coming to my attention was there a holding based upon an abstract legal principle "that the exclusion of competent evidence is presumed to be prejudicial." Neither does the case of Owens v. Frank, 7 Wyo. 457, 53 P. 282, 75 Am.St. Rep. 932, stand for such a principle. That case involved an alleged fraudulent sale made to defeat the rights of existing creditors and plaintiff had called a witness to testify as to a conversation had with the seller concerning the circumstances under

which the sale was made. Sufficient was disclosed by the record to show that the testimony sought was in support of the "crux" of plaintiff's case. The witness claiming privilege, however, refused to divulge all of the conversation. No offer of proof was made as to what the witness would testify, and it was contended by the defendant that plaintiff thus had not shown that the conversation was material or competent to any issue presented in the case. This contention was rejected and because the ruling was based on "privilege" rather than "materiality" it was said that it would "be presumed that the excluded testimony would have been material." That holding hardly supports the proposition that this court "long ago adhered" to a principle that any exclusion of material or competent evidence in a civil action is presumed to be prejudicial. To the contrary, in Robertson v. State Highway Commission, Wyo., 450 P.2d 1003, 1005, involving a procedural error in an eminent domain proceeding, it was said, "This brings us to the general rule that prejudice is never presumed." It is academic that rulings on the admission and exclusion of evidence are procedural and that concept would seem to negate any understanding that Owens laid down a conflicting principle. In the Robertson case, supra, we also adhered to the principle that "the burden is upon the appealing litigant to establish prejudicial error." Fairly recently, in Cederburg v. Carter, Wyo., 448 P.2d 608, 611, we held an exclusionary ruling of testimony with respect to the relevant and material issue of speed in a negligence case was not error under the circumstances of that case and then went on to say:

"* * * In any event, appellant fails to show us, either by authority or reason, how the ruling could have been prejudicial to defendant. On appeal, the appellant has the burden of showing harmful error. * * *"

As stated in the majority opinion here, that has always been the holding of this court and we have not said that such a burden was aided by a presumption. Our views with respect to an appellant's burden under Rule 61 are fully supported by holdings of the Federal courts made both prior to and subsequent to the adoption by this court of Rule 61. In Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 482, 87 L.Ed. 645, 144 A.L.R. 719, rehearing denied 318 U.S. 800, 63 S.Ct. 757, 87 L.Ed. 1163, it was said:

"* * * Mere 'technical errors' which do not 'affect the substantial rights of the parties' are not sufficient to set aside a jury verdict in an appellate court. [Citations.] He who seeks to have a judgment set aside because of an erroneous ruling carries the burden of showing that prejudice resulted. * * *"

See also Bonner v. Polacari, 10 Cir., 350 F.2d 493, 496; Slatinsky v. Bailey, 8 Cir., 330 F.2d 136, 141; Creekmore v. Crossno, 10 Cir., 259 F.2d 697, 698; and Railway Express Agency v. Epperson, 8 Cir., 240 F.2d 189, 193–194.

With respect to the comment that the commission was "improperly cut off in the development of its theory" on the critical and subsidiary issue of whether the ranch was damaged as a whole or only to the extent of the damage inflicted upon the lands in close proximity to the highway, the record, in all due respect to my associate, does not bear out that assumption. The major portion of the evidence related to this issue. Both Dunham and Goodman, the two valuation witnesses of the commission, testified freely and at length in support of the commission's theory. Both said that they were familiar with the operations of the Miller Ranch as a cattle ranch; were familiar with the plans and specifications for the underpasses and structures underlying the highway; discussed in some detail how each of the underpasses and structures fit into the operations; and each gave it as his opinion that although there were some problems to be overcome for which an allowance had been made the structures were adequate to permit continuation of the operation of the Miller Ranch as a unit. When it

is considered that the evidence pertaining to the theories was most conflicting and that the jury resolved the conflict, it can scarcely be said that the majority assumed that the jury rejected the theory advanced by the commission. Such was the fact.

Likewise there is nothing in the majority opinion that would suggest that this court or the trial court "granted unrestricted freedom" in the use of "comparables" to the defendant and not to the commission. The fact is, if it is of any significance, that only one of defendant's witnesses, the witness Arnold, without objection specifically testified to the detail of two sales of other ranch property as compared with the three "comparables" about which both of the commission's witnesses freely testified. The significant thing is that neither the dissent nor the commission points out on the basis of the record wherein the detail of the excluded "comparables" was anything more than cumulative.