Paul L. TUGWELL, Appellant,

v.

A. F. KLAVENESS & COMPANY et al., Appellees.

No. 20278.

United States Court of Appeals Fifth Circuit.

July 3, 1963.

Rehearing Denied Aug. 29, 1963.

---

W. Jiles Roberts, Houston, Tex., for appellant.

Milas C. Bradford, Jr., Houston, Tex., Baker, Botts, Shepherd & Coates, Houston, Tex., of counsel, for appellees.

Before HUTCHESON, Circuit Judge, LUMBARD, Chief Judge *, and BROWN, Circuit Judge.

JOHN R. BROWN, Circuit Judge.

After a four-day jury trial in which nine live swearers were heard on a record comprising over 480 pages of testimony, the jury in response to a spe-

* Of the Second Circuit, sitting by designation.

cial interrogatory [1] under F.R.Civ.P. 49 [2] which went to the very vitals of the case, found that the longshoreman-plaintiff had not sustained the accidental injury on July 12, 1958, which was the subject matter of his third party suit against the shipowner based upon negligence-unseaworthy theories running the gamut from Sieracki to Yaka.[3] The unsuccessful plaintiff recognizing the adequacy of the record to support the finding that the accident did not occur, seeks a reversal because of two procedural rulings each related to the receipt of evidence.

■ The difficulties of that attack are formidable. These bear emphasis at the outset since the problem is not the simple one of identifying the two incidents and then under microscopic examination ascertain whether in one way or another the rulings lack perfection. Under command of F.R.Civ.P. 61 and 28 U.S.C.A. § 2111, ours is a more substantial function which epitomizes the very nature of adjudication. We must determine whether, assuming the action under review to have been erroneous, was it really harmful to the complaining party? Degelos v. Fidelity & Casualty Co., 5 Cir., 1963, 313 F.2d 809, 814; Ahlstedt v. United States, 5 Cir., 1963, 315 F.2d 62, 66.

The first error complained of was the exclusion of a copy of a report filed with the Deputy Commissioner [4] by the insurance carrier of the stevedoring company who was plaintiff's employer. This form [5] did not relate to the occurrence of July 12, 1958, the subject of the suit. Rather, it related to an alleged injury of May 28, 1957. Although it is not easy to follow the Plaintiff's theory of harmful error, apparently he contends that this negative report from a disinterested source would corroborate the Plaintiff and hence shore up his general credibility which the specific jury verdict indicates was pretty well undermined. This would result, he contends, from these very unusual circumstances. The Plaintiff had repeatedly testified on direct and cross examination that never before had he

1. "Interrogatory No. 1:
  "Did plaintiff, Paul L. Tugwell, sustain an injury by slipping and falling upon the deck of the M/S Pleasantville during the early morning hours of July 12, 1958?
  "You will answer 'Yes' or 'No'.
  "Answer: ————No——————."

2. This case illustrates again the utility so often extolled by us of the use of a general charge with special interrogatories under F.R.Civ.P. 49. See Duke v. Sun Oil Co., 5 Cir., 1963, 320 F.2d 853, n. 19; Nesmith v. Alford, 5 Cir., 1963, 318 F.2d 110, n. 30; Smoot v. State Farm Mutual Auto Ins. Co., 5 Cir., 1962, 299 F.2d 525, 533, n. 18; Travelers Ins. Co. v. Busy Electric, 5 Cir., 1961, 294 F.2d 139, 149; Vickers v. Tumey, 5 Cir., 1961, 290 F.2d 426, 1961 AMC 1173, notes 4 and 9; Warren Petroleum Co. v. Thomasson, 5 Cir., 1959, 268 F.2d 5, 9, n. 3; Clegg v. Hardware Mutual Casualty Co., 5 Cir., 1959, 264 F.2d 152; Fall v. Esso Standard Oil Co., 5 Cir., 1961, 297 F.2d 411, 1962 AMC 951, n. 7, cert. denied, 371 U.S. 814, 83 S.Ct. 24, 9 L.Ed.2d 55; Davis v. Parkhill-Goodloe Co., 5 Cir., 1962, 302 F.2d 489, n. 6; Shaw Warehouse Co. v. Southern Ry. Co., 5 Cir., 1961, 288 F.

2d 759, on rehearing, 294 F.2d 851, 853, at 854 (dissenting opinion).
  The inscrutable mystery of a general verdict for the defendant under a general charge would have left an impenetrable uncertainty as to whether these evidentiary rulings might have infected, say, the dollar evaluation of damages or the medical extent of any such injury. Here the jury positively held the occurrence did not take place.

3. Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099, 1946 AMC 698; Reed v. S. S. Yaka, 1963, 373 U.S. 410, 83 S.Ct. 1349, 10 L. Ed.2d 448.

4. Under the Longshoremen and Harbor Workers Compensation Act, 33 U.S.C.A. § 901 et seq.

5. This was Plaintiff's Exhibit 8 on Form 7107. This is described as "Employer's supplementary report of accident or occupational disease." After identification of employer, employee, the date of the accident, the form reflected:
  "No. 5. Date disability began _____ None ——."
  "No. 6. On what date did injured person return to work? _____No medical treatment."_____

sustained a back injury. On cross examination the Shipowner, presumably armed with some data from reports filed by the insurance carrier, confronted him with the earlier 1957 occurrence. To this he answered in effect that if it occurred, he had no recollection of it. On this he then constructs the argument that since the exhibits showed that there was no disability and no medical treatment afforded for the 1957 incident, this would demonstrate that he was honest in testifying that (a) he had sustained no prior injury and (b) the event was so trivial that it could have escaped his recollection, and hence given an honest ring to his denials "so far as I can remember."

■■ Without much critical regard to the Business Records Statute, 28 U.S. C.A. § 1732, which as to records made in the regular course of business and properly authenticated makes it generally unnecessary to produce as live swearers each of the persons having direct knowledge of the events or facts revealed, the Shipowner by intuitive reflex objected to this as "hearsay" and as being "incompetent." Without intimating any views as to its technical admissibility, cf. Missouri Pacific R.R. v. Austin, 5 Cir., 1961, 292 F.2d 415, 421, 422, we are clear that its exclusion was not a harmful error, if it was an error at all. Hardly anywhere does the inherent nature of an adversary trial commit so much to the careful, but wide and flexible, discretion of the Judge. See Reagan v. Sinclair Refining Co., 5 Cir., 1963, 319 F.2d 363.

■ The second complaint oddly enough relates to the use of another form required under the Longshoremen's Act as between the stevedoring company, the employer, and the injured employee. During cross examination of the Plaintiff, the Shipowner developed that in the civil action complaint, no specific mention was made of the existence of the oft-times ubiquitous grease and other slippery substance on the deck near the cargo winch. The Shipowner then identified the official form US–203, "Employee's claim for compensation," signed by the Plaintiff Tugwell in connection

with his claim for compensation growing out of the accident of July 12, 1958, the subject of the suit. Plaintiff's counsel objected to interrogation of the Plaintiff concerning this form generally on the ground that under the Longshoremen's Act, no specification of the cause of the injury is necessary, and therefore it was improper to cross examine the Plaintiff as to entries on the form since this implied to the jury that causes different from those initially reported were now asserted in the lawsuit. In immediate response to this objection, the Court then made the statement which Plaintiff now insists was a strong moral censure of the Plaintiff and his counsel.

"The Court: The plaintiff has filed a suit in this court and he is subject to being examined about it. I will overrule the objection. He can't be asking with one hand and withholding with the other.

"Plaintiff's Counsel: We don't intend to—

"The Court: It is your intention to withhold information. My ruling is since the plaintiff has come to this court and filed a claim in this court that I will allow the defendant to interrogate him about it."

There was an immediate motion for a mistrial which was argued at length in the absence of the jury. During this colloquy, the Court disavowed any purpose to make or imply censure and requested Plaintiff's counsel to prepare a suitable instruction. Though considerable time was afforded to do this, counsel was apparently unable to complete it by the time the Court considered the trial should resume. The Judge did, however, use the incompleted draft instruction in the instructions given to the jury immediately on resuming. Of course the Judge was confronted with the paradox of the law in which, to make certain that the jury excludes some particular thing from its consideration, the Court must specifically identify that which might well have gone unnoticed when it took place. Here the Judge did that by calling

the jury's attention to the fact that "an objection was made by the Plaintiff concerning the Court's earlier comments in the case wherein something \* \* \* was said concerning that the Plaintiff would not be permitted to withhold evidence." The Court then proceeded to give this positive instruction.

"You are instructed that the Court did not mean to imply that plaintiff has or is attempting to improperly withhold evidence in the case. My ruling is simply that defendant will be allowed to interrogate the plaintiff concerning his claims in the case."

As there was some concern on counsel's part that the Court had misunderstood his requested instruction, there was a further conference so that the Court reiterated the instruction in a different way.

"The Court: I will read it again. You are instructed that the Court did not mean to imply that the plaintiff has or is attempting to withhold properly admissible evidence in this case. I added the comment that the basis of my ruling is that the defendant may interrogate the plaintiff concerning his claims in the case."

■ Again facing this problem as a matter of substantive importance, we think the whole incident was magnified all out of proportion. The Court was not undertaking to suggest any moral criticism. As the Judge made clear in the precautionary instruction framed partly in his own, and partly in counsel's suggested words, what and all he was doing in the ruling complained of was observing in effect that the plaintiff did not think the evidence was properly admissible. It is not likely that the term "withhold" under the circumstances carried any other connotation. And in any event, this brief innocuous exchange could have had no harmful consequences. At the end of a 4-day trial in which witnesses were examined, and re-examined, cross examined, and re-cross examined until each was thoroughly swabbed of the last remote vestige of a possible relevant fact, the jury, perhaps better than anyone else, knew that the whole occurrence had been fully canvassed. Perhaps the word "withhold" was poorly chosen, but the administration of justice is something more profound than unattainable inerrancy or verbal perfection. Maryland Casualty Co. v. Reid, 5 Cir., 1935, 76 F.2d 30.

■ After a long and hard, well fought trial, the jury, with ample intrinsic and extrinsic evidence and the opportunity to observe the witnesses close at hand, concluded that the accident never took place. That was the function of the jury, and neither of these two isolated episodes infected the result. That is the end of it.

Affirmed.