468 F.2d 172
 4 Fair Empl.Prac.Cas. 1269,
4 Fair Empl.Prac.Cas. 741,
4 Empl. Prac. Dec. P 7775
Brisco HUFF, on behalf of himself and others similarly
situated, Plaintiff-Appellant,
v.
N. D. CASS COMPANY OF ALABAMA, Defendant-Appellee.
 No. 71-2842.
 United States Court of Appeals,
Fifth Circuit.
 April 24, 1972.
Rehearing En Banc Granted July 18, 1972.
 
 U. W. Clemon, Birmingham, Ala., Nathaniel Jones, Williams Wells, NAACP, New York City, Adams, Baker & Clemon, Birmingham, Ala., for plaintiff-appellant.
 Perry Hubbard, Tuscaloosa, Ala., O. S. Burke, Jr., Marion, Ala., Hubbard & Waldrop, Tuscaloosa, Ala., for defendant-appellee.
 Before THORNBERRY, COLEMAN and INGRAHAM, Circuit Judges.
 COLEMAN, Circuit Judge:
 
 
 1
 The N. D. Cass Company, located in Brent, Alabama, is engaged in the manufacture and marketing of children's furniture and toys. It is a small family-owned business which, as of March 30, 1971, employed 152 individuals. This employment figure included twenty-five blacks. Employment at the plant varies with the seasonal demand for the company's products. Operations at the plant are divided into three departments-Mill, Production, and Shipping.
 
 
 2
 Brisco Huff, President of the local chapter of the National Association for the Advancement of Colored People (NAACP), began his employment at the plant in March, 1967, as a dipper in the production department. As a dipper, his duties consisted of mixing paints or stains; maintaining the paint or stain at the proper viscosity in the dip tank; transporting the products from the manufacturing area to the painting area; immersing the products in the dip tank; hanging the products on the hooks of the conveyor; and stacking or "tailing" the finished products.
 
 
 3
 On December 3, 1969, Huff's employment at the plant was terminated. Not being recalled for employment when certain jobs reopened at the plant during the early part of 1970, Huff filed a formal charge of discrimination with the Birmingham Area office of the Equal Employment Opportunity Commission (EEOC).
 
 
 4
 In his charge he claimed that his termination and the subsequent failure of the company to recall him for employment as jobs reopened were motivated by racial considerations and by the fact that, as President of the local chapter of the NAACP, he had voiced complaints about the company's failure to hire black women which eventually led to their being hired.
 
 
 5
 On February 2, 1971, the Director of the Birmingham Area office of the EEOC notified Huff of his right to bring a civil action against the company within thirty days. Huff then commenced this suit against the company under Title VII of the 1964 Civil Rights Act, 42 U.S.C. Sec. 2000e et seq., on behalf of himself and the class he sought to represent.
 
 
 6
 The class was composed of "black persons who are employed or might be employed by the defendant company who have been and continue to be or might be adversely affected by the practices complained of herein". The complaint alleged that Huff and the class he sought to represent met those prerequisites imposed by Rule 23(a) of the Federal Rules of Civil Procedure which must necessarily be complied with before a class action can be maintained.[1]
 
 
 7
 In addition to repeating those allegations concerning the reasons for Huff's termination and the company's subsequent failure to recall him as presented in the formal charge filed with the EEOC, the complaint also alleged that the company discriminated against black workers as a class by restricting them to the lower paying, more menial jobs at the plant and by operating a discriminatory recall policy.
 
 
 8
 As relief, he and the class he sought to represent asked that the company be permanently enjoined from engaging in these discriminatory practices against its black workers and that the company be forced to take certain affirmative steps to alleviate the effects of past discrimination. Huff, as an individual, asked that he be reinstated in his former position with appropriate back pay.
 
 
 9
 In its answer, the company denied all allegations of racially discriminatory employment practices at its Brent plant. It also denied that Huff's termination and its subsequent failure to recall him were motivated by racial considerations. Instead it contended that its sole reason for failing to recall Huff was the poor quality of his work.
 
 
 10
 On April 15, 1971, the District Court, by an Order on Pre-Trial Hearing, postponed a decision on the propriety of the class action until it could determine whether Huff was entitled to be reinstated as an employee. Realizing that a class action could not be maintained unless Huff, the only named plaintiff, could fairly and adequately protect the interests of the class he sought to represent, a requirement imposed by Rule 23(a) (4), and doubtful of his ability to do so unless he was able to show that he was entitled to be reinstated, the Court ordered a separate hearing on this question.
 
 
 11
 On April 6, 1971, interrogatories were served upon the company. The company then refused to answer those interrogatories which related to the claim of the class on the ground that such interrogatories were not relevant to the question then pending before the Court, namely whether Huff was entitled to be reinstated as an employee. A subsequent motion to compel answers to all interrogatories was denied.
 
 
 12
 On June 1, 1971, after a hearing at which both parties presented witnesses, the Court concluded that Huff was not entitled to be reinstated as an employee because "the decision by the company not to recall plaintiff in 1970 was based entirely on his failure to perform his duties in a manner reasonably acceptable to the company, and that such decision was not motivated wholly or partially by racial considerations".
 
 
 13
 Briefs on the question of whether Huff, an ex-employee discharged for a perfectly valid reason, could fairly and adequately protect the interests of the class which he sought to represent were then filed, pursuant to a request by the Court.
 
 
 14
 On June 19, 1971, the Court, after filing a Memorandum Opinion in which it found that he could not do so, entered a judgment dismissing the class action and denying the relief sought by Huff.
 
 
 15
 Huff appeals from this judgment and contends that the District Court committed error by finding that he was not recalled because of the poor quality of his work, by limiting discovery under Rule 33 of the Federal Rules of Civil Procedure to interrogatories concerning his individual claim, and by requiring him to prevail in his individual claim before allowing him to proceed with the class action.
 
 
 16
 * Testimony conflicted concerning Huff's work habits. Witnesses testifying on his behalf denied having ever seen any of the company's products or equipment destroyed or damaged because of his inattention or negligence or of having ever seen him neglect the performance of his duties as a dipper. They also testified that they had never heard any company official complain about the quality of Huff's work. Testimony was also given concerning the NAACP campaign to force the company to hire black females and of Huff's participation in this campaign. It seems that the campaign consisted of a meeting at Huff's home, which was then followed by meetings between a labor field director of that organization, Grover Smith, and company officials.
 
 
 17
 On the other hand, the company's witnesses testified that on many occasions Huff neglected to perform his duties as a dipper. They testified that he did not properly tail the conveyor or stack certain products and did not see that the paint or stain in his dip tank was kept at the proper viscosity or free of foreign matter. They also testified that he did not properly dip the products which were to be painted and that he hung too many items on the hooks of the conveyor, thereby causing the destruction of products and equipment.
 
 
 18
 While denying that one of his duties was to see that the viscosity of the paint or stain in his dip tank was kept at the proper level, Huff admitted that he had been corrected about hanging too many items on the hooks of the conveyor and that "a time or two", two or three chairs had been destroyed because of his negligence. He also admitted that products had been brought to him by other employees of the production department and that the paint shield on the conveyor had been damaged once every two or three months during his employment at the company's plant. However, he claimed that the destruction of the paint shield was not caused by any negligence on his part.
 
 
 19
 Although Huff complained that his discharge was caused by his activities as President of the local NAACP chapter in a campaign to force the company to hire black women, there is no evidence that company management was aware of such a campaign or of Huff's participation on its behalf. No evidence appears in the record showing that any official of the NAACP ever contacted the company with regard to the employment of black women. Huff, testifying on his own behalf, never testified that he talked with company officials with regard to this subject. No person testified that they contacted or otherwise attempted to influence the company to employ black women.
 
 
 20
 Therefore, an inference that Huff was not recalled because of his activities as President of the local NAACP chapter on behalf of such a campaign is not supported by the record. Inferences are built only on established facts. Such an inference could only be built on testimony showing that the company, through its officials, was aware of this campaign and of Huff's activities on its behalf. Nor can the fact that Huff was not recalled after black women were hired support such an inference, in the absence of some evidentiary support.
 
 
 21
 Findings as to the intent, design, motive or purpose behind certain actions are peculiarly dependent upon the credibility of witnesses. When testimony conflicts as to the intent, design, motive or purpose behind a certain action, credibility choices must be made. Because of its opportunity to observe the witnesses and judge their credibility, such choices are for the trial court. United States v. Yellow Cab Co., 338 U.S. 338, 70 S.Ct. 177, 94 L.Ed. 150 (1949); United States v. Board of Education, 5 Cir., 1964, 332 F.2d 40; United States v. Leflore County, 5 Cir., 1967, 371 F.2d 368.
 
 
 22
 Because of these facts, this Court, when called upon to review such a finding, gives due regard to the opportunity of the trial court to observe and judge the credibility of the witnesses and then disturbs its findings only if they are found to be "clearly erroneous". For a finding to be clearly erroneous, after viewing the record, we must be left with a definite and firm conviction that a mistake has been committed. Fed.R.Civ.P. 52(a); Wimbish v. Pinellas County, 5 Cir., 1965, 342 F.2d 804; Chaney v. City of Galveston, 5 Cir., 1966, 368 F.2d 774.
 
 
 23
 After a careful consideration of the record, we must hold that the trial court findings that Huff was not recalled because of the poor quality of his work is not clearly erroneous.
 
 II
 
 24
 Huff also contends that the trial court erred when it refused to compel the company to answer every one of the interrogatories which were propounded by him on April 6, 1971. The company at the time was required only to answer those interrogatories which the Court decided were relevant on the question concerning Huff's individual claim. As a result, no answers were given to interrogatories which concerned the class action issues, e. g., separate lines of progression, restriction of blacks to menial, low-paying jobs, etc.
 
 
 25
 The company contends that because these issues were not before the Court at that time, the trial court correctly postponed the answering of the interrogatories which might have cast light on them until a determination could be made as to propriety of the class action. It particularly relies on Rule 26(b) of the Federal Rules of Civil Procedure, which is incorporated into Rule 33 of those same rules. These rules limit discovery of interrogatories to those matters which are relevant to the subject matter involved in the pending action or which are reasonably calculated to lead to the discovery of evidence admissible in the pending action.
 
 
 26
 A trial court may exercise its discretion in allowing discovery under Rule 33, and in the absence of a ruling which results in substantial prejudice to the rights of the parties there is no abuse of discretion. Technical errors made with regard to the allowance of discovery are not harmful, unless they result in substantial prejudice to either party's case. Bell v. Swift & Co., 5 Cir., 1960, 283 F.2d 407; N.L.R.B. v. Safway Steel Scaffolds Company of Georgia, 5 Cir., 1967, 383 F.2d 273.
 
 
 27
 Huff claims that he was prejudiced by the Court's refusal to compel the company to answer those interrogatories which admittedly related only to the class discrimination allegations of the complaint. He contends that prejudice resulted because he was thereby denied the opportunity to gather information which might have been relevant on the question of whether his failure to be recalled was motivated by racial considerations.
 
 
 28
 He concedes that the answers to these interrogatories could only have produced circumstantial evidence as to the cause of his failure to be recalled; answers to these interrogatories may have shown that blacks were restricted to low paying, menial jobs at the company and, as a result, may have shown that the company discriminated in certain areas on the basis of race.
 
 
 29
 However, Huff was not denied information as to the company's activities in that area where he specifically accused the company of discriminating against him on the basis of his race. By the company's answer to Interrogatory No. 32, he was furnished with the name, address, race and date of employment of every person, within the company's knowledge, who had not been recalled after being terminated by the company between January 1, 1965 and December 31, 1970. Of the thirty-four employees who were terminated and not recalled during this period, only two were black. By the answer to this interrogatory, he was also given the company's reason for failing to recall each person.
 
 
 30
 All other interrogatories which related to the company's recall policy were answered. Huff's contention that he was unable to adduce evidence on the question of whether the company operates a racially discriminatory recall policy is unfounded.
 
 
 31
 Assuming arguendo that the trial judge erred in not requiring the company to answer all of Huff's interrogatories, we are unable to say that he was thereby denied a full and fair hearing on the claim which he presented. Having considered the opportunity given him to pursue discovery pursuant to Rule 33, we are of the opinion that he has not shown that he was prejudiced by the trial court's refusal to require the company to answer interrogatories which were admittedly related to questions concerning other alleged discriminatory practices at the company's plant and which may have shown, at their most productive, that the company discriminated on the basis of race with regard to certain employment practices not involved in Huff's individual claim.
 
 III
 
 32
 Huff's third (and the most serious) objection is that he was required to prevail on his individual claim before being allowed to proceed with his class action. He says that this was reversible error under the teachings of Johnson v. Georgia Highway Express, 5 Cir., 1969, 417 F.2d 1122. See, also, Miller v. Mackey International, Inc., 5 Cir., 1971, 452 F.2d 424. This requires a most careful analysis of the procedure followed by the District Court in the instant case.
 
 
 33
 In Johnson the District Court held that the former employee could not maintain his suit as a class action until he proved that he had been discharged because of race. It must be emphasized, however, that Johnson came to us on interlocutory appeal, not after witnesses had been heard and it had been determined as a matter of fact that Johnson was not a member of the purported class. We said, 417 F.2d at 1124-1125:
 
 
 34
 "Whether he [Johnson] will adequately represent the class is a question of fact to be 'raised and resolved in the trial court in the usual manner [citation omitted]'. Therefore, the court below, if it doubted appellant's ability to protect the interests of the class, could have had, and on remand still can have, an evidentiary hearing on the issue."A reading of the order at the pre-trial hearing below reflects that the Court was attempting to hold a Rule 23(a) (4) hearing.[2]
 
 
 35
 By whatever label, and regardless of the theory upon which it proceeded, Huff has had a hearing. That hearing developed that he was not a member of the class which had any rights to be protected. He had not been discharged for racial reasons. His inability to obtain future employment with the company was not due to racial considerations. He did not then work for the company. He had not worked there for fifteen months at the time suit was filed. In the absence of an adjudication that he was entitled to reinstatement he had no prospect of going to work there again.
 
 
 36
 Unless abuse is shown, the decision of a trial court as to whether a class action is properly brought is final, Johnson, supra, 417 F.2d at 1123.
 
 
 37
 Rule 23(c) (1) requires a trial court to make a determination, as early in the proceedings as may be practicable, as to whether an action brought as a class action is to be maintained as such. The determination depends in each case on satisfaction of the terms of subdivision (a), membership in the class, and the relevant provisions of subdivision (b). Advisory Committee Notes, 39 F.R.D. 60, 104 (1966); Miller v. Mackey International, Inc., 452 F.2d at 428.
 
 
 38
 Because the trial court did find facts which demonstrated Huff not to be a member of the class, and because this finding is not clearly erroneous, we confront the futility of ordering the repetition of a hearing which already has been held, a repetition would inevitably lead to the same findings which are before us for review, although they are now presented in something of a procedural context.
 
 
 39
 In order to have standing to bring a class action, the class representative must first and foremost be a member of the class which he seeks to represent. Bailey v. Patterson, 1962, 369 U. S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512; Hall v. Beals, 1969, 396 U.S. 45, 90 S.Ct. 200, 24 L.Ed.2d 214; Hamer v. Campbell, 5 Cir., 1966, 358 F.2d 215; Singleton v. Board of Commissioners of State Institutions, 5 Cir., 1966, 356 F.2d 771.
 
 
 40
 Class actions of the type now in question have become one of the great instruments used by workers of a race, religion, sex, or national origin in gaining equal employment opportunities. Persons who lead such actions have come to be known as "private Attorneys General". If we were to remand the case to the District Court to allow Huff to lead an action on behalf of a class of which he was not a member we would sanction a "sham" class action. This would not only destroy the dignity which has distinguished this type of action but it would likewise destroy the true role of the class action plaintiff.
 
 
 41
 The action of the District Court in deciding the merits of Huff's individual claim, incidentally to a determination of his standing to pursue the class action as the only named plaintiff, does not erase the fact, shown by an evidentiary hearing, that Huff is not a member of the class he sought to represent, that is, one presently employed or who might thereafter be employed, and thus subject to the alleged discriminatory conduct of which he attempted to complain on behalf of others similarly situated.
 
 
 42
 To be more specific, we recognize the difference existing between (1) requiring a class action plaintiff to prove that he will prevail in his individual case before allowing the action to proceed, and (2) first ascertaining if he is a member of the class he seeks to represent. No class action plaintiff has to prove in order to gain access to the courts that he will prevail on his individual complaint. He does have to show, when it is brought to issue under Rule 23, that he is a member of a class "of those similarly situated" and that he can adequately represent it.
 
 
 43
 It is not necessary, purely for the sake of form, that Huff's individual complaint be heard over.
 
 The judgment of the District Court is
 
 44
 Affirmed.
 
 THORNBERRY, Circuit Judge (dissenting):
 
 45
 With deference, I must dissent from the majority opinion because of my belief that it ignores the clear import of this Court's decision in Johnson v. Georgia Highway Express, Inc., 5 Cir., 1969, 417 F.2d 1122. In Johnson, the appellant, a discharged Negro employee, was denied the right to represent the class of Negro employees suffering from alleged discriminatory employment practices until he could prove his own right to reinstatement. On interlocutory appeal, this Court reversed and held that the appellant was entitled to attack as representative of all Negro employees the alleged system wide policy of racial discrimination, in spite of his discharged status. Although, as the majority points out, Johnson was remanded for an evidentiary hearing on the issue of whether the appellant could adequately protect the interests of the class, the Court there made clear that,
 
 
 46
 In this regard the standard to be applied is not whether appellant will prevail, but is as stated by Judge Medina:
 
 
 47
 An essential concomitant of adequate representation is that the party's attorney be qualified, experienced, and generally able to conduct the proposed litigation. Additionally, it is necessary to eliminate so far as possible the likelihood that the litigants are involved in a collusive suit or that plaintiff has interests antagonistic to those of the remainder of the class. Eisen v. Carlisle and Jacquelin, 2 Cir. 1968, 391 F.2d 555.
 
 
 48
 417 F.2d at 1125.
 
 
 49
 It is clear that this standard has not been followed in the instant case. Instead, the district court's purported hearing revealed only that appellant here could not prevail on his individual claim. I would, therefore, reverse and remand for a proper Rule 23(a) (4) hearing in accordance with the principles enunciated in Johnson.
 
 
 50
 ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC
 
 
 51
 Before JOHN R. BROWN, Chief Judge, and WISDOM, BELL, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, SIMPSON, MORGAN, CLARK, INGRAHAM, and RONEY, Circuit Judges.*
 
 BY THE COURT:
 
 52
 A member of the Court in active service having requested a poll on the application for rehearing en banc and a majority of the judges in active service having voted in favor of granting a rehearing en banc,
 
 
 53
 It is ordered that the cause shall be heard by the Court en banc with oral argument on a date hereafter to be fixed. The Clerk will specify a briefing schedule for the filing of supplemental briefs.
 
 
 
 [1]
 Rule 23. Class Actions
 (a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
 
 
 [2]
 
 IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA
 WESTERN DIVISION
 BRISCO HUFF, on behalf of himself
 and others similarly situated,
 Plaintiff
 vs.
 N.D. CASS COMPANY OF ALABAMA, a corporation,
 Defendant
 CIVIL ACTION
 No. 71-171
 FILED IN CLERK'S OFFICE
 Northern District of Alabama
 APR 5 1971
 WILLIAM E. DAVIS
 Clerk, U. S. District Court
 By ____________________}FC Deputy Clerk
 ORDER ON PRE-TRIAL HEARING
 This cause coming on to be heard on a regular pre-trial hearing, and all parties being present in person or by counsel, the following action was thereupon taken:
 
 
 [1]
 The following pleadings and amendments were allowed:
 The complaint and the answer.
 
 
 [2]
 It was agreed by all of the parties that the following are all of the issues in controversy in this cause:
 Proceeding under the provisions of Chapter VII of the Civil Rights Act of 1964, plaintiff purports to represent the class of black employees of defendant and contends that defendant maintains a policy, practice, custom or usage of discriminating against its black workers in its job classifications or assignments, and limits its black workers to the lower paying, more menial jobs at defendant's plant. Plaintiff further insists that defendant operates a racially-discriminatory lay-off, recall policy.
 Plaintiff further contends that he was laid off by defendant on or about December 1, 1969, and has never been recalled by defendant. Plaintiff insists that such lay-off and failure to recall was motivated in whole or in part by his activities as president of the local chapter of the NAACP protesting defendant's racially discriminatory employment practices and the filing of a charge of discrimination against defendant with the Equal Employment Opportunity Commission.
 By its answer, defendant pleads the general issue and denies all allegations of racially discriminatory practices.
 Defendant expressly denies that its failure to recall plaintiff was motivated, either in whole or in part by racial discrimination, but on the contrary insists that such failure to recall was based solely upon the quality of plaintiff's work and production. Over the objection and exception of plaintiff, the Court postpones determination of whether this action may proceed as a class action until the issue of defendant's lay-off and failure to recall the plaintiff is determined. It is the opinion of the Court that plaintiff, the only named plaintiff, could not fairly and adequately protect the interests of the class as required by Rule 23(a) (4), Federal Rules of Civil Procedure, if it should be adjudicated that he is not entitled to the status of an employee of defendant. Therefore, a separate trial of such issue is hereby ordered.
 It is therefore ORDERED by the Court that all of the above-named allowances and agreements be and the same are hereby binding upon all parties in the abovestyled cause, unless this order be hereafter modified by order of the Court.
 Done this 5th day of April, 1972
 Seybourne H. Lynne
 United States District Judge.
 
 
 *
 Judge Gewin did not participate in the consideration of the Petition for Rehearing En Banc