**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**James Earl LANE and Diane Willis,**
**Defendants-Appellants.**

**No. 81–1547.**

United States Court of Appeals,
Fifth Circuit.

Nov. 26, 1982.

Frank D. McCown, Fort Worth, Tex., for Lane.

Robert T. Stites and James W. Collier, Fort Worth, Tex. (Court-Appointed), for Willis.

John W. Sweeney, Jr., Asst. U.S. Atty., Fort Worth, Tex., for plaintiff-appellee.

Before THORNBERRY, JOHNSON and HIGGINBOTHAM, Circuit Judges.

JOHNSON, Circuit Judge:

Defendants, Diane Willis and James Earl Lane, were each convicted on two counts of distribution of heroin. Defendants' convictions resulted from an undercover Drug Enforcement Administration (DEA) operation in which a paid DEA informant arranged to purchase heroin from the defendants in a bar in Fort Worth, Texas. Defendants raise several grounds of error on appeal,

including an allegation that their convictions should be reversed since the Government informant was paid pursuant to a contingent fee agreement. This Court, concluding that none of the defendants' grounds of error merit reversal, affirms the district court's judgment.

## I. The Undercover Operation

■ In March of 1981, Levy Bradley contacted a narcotics officer with the Fort Worth Police Department and indicated that he was interested in becoming an informant. The Fort Worth police officer met with Bradley, and, thereafter, set up a meeting between Bradley and DEA Special Agent John Lunt. Bradley agreed to become a paid informant for DEA and was to be paid on a case-by-case basis, the amount to be determined after each narcotics transaction. Bradley participated with DEA agents in approximately twenty-two narcotics transactions, including the two transactions that gave rise to the instant proceeding.

On March 25, 1981, Bradley went to The 2500 Club in Fort Worth and told defendant Lane, who Bradley knew as "Redman," that he wanted to buy thirty heroin capsules for $600. Lane informed Bradley that he could supply him with the heroin, and, thereafter, Bradley went to the DEA office in Fort Worth and informed the DEA of the potential narcotics transaction. DEA Agent Howard and Bradley returned to The 2500 Club and told defendant Lane that they had come to pick up the heroin capsules. Defendant Lane did not have the heroin with him but instructed defendant Willis to go and get the capsules. While Willis was obtaining the heroin, Bradley paid defendant Lane with money given him by agent Howard. This payment was observed by agent Howard. When defendant Willis returned with the heroin, defendant Lane told Bradley that agent Howard would have to wait outside because Lane did not know agent Howard. Upon agent Howard's exit, defendant Willis gave defendant Lane the thirty capsules and Lane counted them out to Bradley, who subsequently delivered the thirty capsules to agent Howard. Count 1 was based on the foregoing facts.

On the morning of April 29, 1981, Bradley again went to The 2500 Club and arranged with defendant Lane to purchase thirty capsules of heroin. Later that afternoon, agent Howard and Bradley returned to the club and announced that they were back to get the heroin. Once again, agent Howard observed Bradley pay defendant Lane $600 and Lane instructed defendant Willis to go and obtain the capsules. Agent Lunt, who was on surveillance in a car outside the bar, observed Willis walk to an area between some houses and return a short time later and re-enter the club. After defendant Willis returned, agent Howard was asked to leave and Willis gave the thirty capsules to Lane, who counted them out to Bradley. The thirty capsules were given to agent Howard upon his exit from the club. The April 29th narcotics transaction provided the basis for Count 2.

## II. The Contingent Fee Arrangement

Appellants contend that their convictions should be reversed since the Government informant was paid on a contingent fee basis. Initially, appellants argue that the contingent fee agreement violates the standards set forth in this Court's holding in *Williamson v. United States,* 311 F.2d 441 (5th Cir.1962). Additionally, appellants maintain that DEA's utilization of Bradley as a paid informant violates the doctrine of fundamental fairness. This Court holds that the agreement did not violate *Williamson* and its progeny and that the DEA's activity did not contravene the doctrine of fundamental fairness.

In *Williamson v. United States,* this Court reversed a conviction in which the informer assisting the Government was paid a contingent fee to implicate certain targeted defendants. In the instant proceeding, it is uncontested that the paid informant was paid pursuant to a contingent fee. However, there is no indication in the record that Bradley was to implicate government-targeted defendants. To the contrary, the record demonstrates that Bradley randomly implicated narcotics traffickers and was not directed toward certain

individuals by the DEA. *Williamson's* progeny indicates that *Williamson* requires reversal "only when the specific defendant was picked out for the informer's efforts by a Government agent." *United States v. Onori,* 535 F.2d 938, 942–43 (5th Cir.1976); *United States v. Joseph,* 533 F.2d 282, 285–86 (5th Cir.1976); *United States v. Oquendo,* 505 F.2d 1307, 1310 (5th Cir.1975); and *United States v. Durham,* 413 F.2d 1003 (5th Cir.), *cert. denied,* 396 U.S. 839, 90 S.Ct. 100, 24 L.Ed.2d 89 (1969). Consequently, this Court holds that *Williamson* was not implicated by the contingent fee used in this case.

Appellants maintain that the Government's conduct in this case constitutes a violation of the doctrine of fundamental fairness. In *Hampton v. United States,* 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976), the Supreme Court recognized that, in a given case, the Government's conduct may be so outrageous as to violate due process. However, concurring Justices in the *Hampton* plurality emphasized that, "[p]olice overinvolvement in crime would have to reach a demonstrable level of outrageousness before it could bar convictions." *Id.* at 495 n. 7, 96 S.Ct. at 1653 n. 7 (Powell, J., concurring). Moreover, recent decisions by this Court indicate that "government infiltration of criminal activity is a recognized and permissible means of investigation." *United States v. Tobias,* 662 F.2d 381, 386 (5th Cir.1981).

A review of the cases in which convictions were reversed on the basis of the doctrine of fundamental fairness demonstrates that the DEA's conduct in this case fails to implicate due process protections. For example, in *United States v. Gray,* 626 F.2d 494 (5th Cir.), *cert. denied,* 449 U.S. 1038, 101 S.Ct. 616, 66 L.Ed.2d 500 (1980), a contention was made that the Government agents violated the doctrine of fundamental fairness by suggesting a drug smuggling scheme to the defendants, and, upon the defendants' acceptance, furnishing the defendants with repair services, an airstrip, and a crew. This Court held that the agents' activity in that case fell short of violating due process since "[t]he providing of essential services is not misconduct...." *Id.* at 498. On the other hand, in *United States v. Twigg,* 588 F.2d 373 (3d Cir.1978), the Third Circuit reversed a defendant's conviction based on the doctrine of fundamental fairness noting that the Government agent suggested the establishment of the drug laboratory, provided the location, equipment, supplies, and knowhow, and then ran the entire operation with only meager assistance from the defendants. The Government's conduct in the instant case does not rise to the level of egregiousness present in *Twigg.* In fact, the DEA operation appears to be a rather basic undercover operation. The DEA did nothing more than supply a buyer to defendants already predisposed to engage in illegal conduct. The DEA did not supply the drugs, the location, or the individuals necessary to run the defendants' narcotics operation. Therefore, this Court concludes that the DEA agent's conduct did not constitute a breach of the doctrine of fundamental fairness.

### III. *The Trial Judge's Conduct*

Appellant Lane has selected several statements of the trial judge from the trial transcript and alleges that these statements, either separately or cumulatively, constitute reversible error. This Court disagrees.

In reviewing the statements made by the district court, this Court must remain cognizant of the role performed by a federal district court judge. In *Quercia v. United States,* the following description of the federal trial judge's role was made:

> In a trial by jury in a federal court, the judge is not a mere moderator, but is the governor of the trial for the purposes of assuring its proper conduct and of determining questions of law. [citations omitted] .... It is within his province, whenever he thinks it necessary, to assist the jury in arriving at a just conclusion by explaining and commenting upon the evidence, by drawing their attention to the part of it which he thinks important, and he may express his opinion upon the

facts, provided he makes it clear to the jury that all matters of fact are submitted to their determination. [citations omitted] . . . .

*Quercia v. United States,* 289 U.S. 466, 469, 53 S.Ct. 698, 699, 77 L.Ed. 1321 (1933). Additionally, we note at the outset that the district court judge instructed the jury that it should not give any weight to his comments in reaching its verdict.[1] *See United States v. Bartlett,* 633 F.2d 1184, 1188 (5th Cir.1981). At the conclusion of the Government's case-in-chief the trial judge stated:

> All right. The government rests, which means that the government feels that it has proven its case now beyond a reasonable doubt and introduces no further evidence. As I stated earlier, there is no burden on the defendant to do anything now at this time, on either defendant, unless they desire to do so.

This statement does not appear to be a comment on the evidence. The judge merely stated that the *Government* felt that it had proven its case beyond a reasonable doubt. This does not imply that the *judge* believes that the Government has proved its case. This Court concludes, therefore, that the judge's statement was a mere procedural instruction and did not result in prejudice to the appellants. The judge's statements "could not reasonably have led the jury to a predisposition of guilt by improperly confusing the functions of judge and prosecutor." *United States v. Gomez-Rojas,* 507 F.2d 1213, 1223 (5th Cir.1975). *See also Quercia v. United States,* 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321 (1933).

1. The trial judge stated:
   Let me tell you, ladies and gentlemen, I do have the right to comment on the evidence and things like that, but if I do comment—I try not to. But if I do, it doesn't carry any weight whatsoever, I guarantee you. And if I sustain somebody's objection or I get impatient with somebody, whether it be the defense or the government, or I seem to be more patient, please do not let that be any indication of how I feel, because I am trying to be just as impartial as I can and it is your responsibility to return the verdict in this case. And whatever verdict you return, I

▮ Appellant Lane contends that the trial judge added prejudicial testimony during a portion of the trial in which a question arose as to whether Bradley was a federal employee. During redirect examination of agent Lunt by the Government, Lunt was asked how much risk was involved when an undercover agent introduces DEA investigators to a drug dealer. Lunt answered by stating that there was a risk of bodily harm. Thereafter, on recross-examination of agent Lunt by defendant Lane, he was asked if truckdriving was not also a risky business. At this point, the judge inserted: "It gets down to risky as compared to what? They tell me sitting here is risky."

A review of the judge's statements indicates that he merely was attempting to expedite the proceeding by pointing out that risk in employment is a relative concept. These statements were well within the judge's supervisory power and did not constitute error.

Appellant Lane next contends that the trial judge erred by interrupting his cross-examination of Bradley concerning the DEA's failure to arrest Lane on the spot. The trial judge stated:

> I think I will instruct you that when a buy like this is made, and you go ask for heroin and a man gives you some substance that purports to be heroin, you can't arrest him till you know it's heroin. So there is—I am instructing the jury to let them know what is going on in this kind of deal. You can have your objection.

will be very pleased with it. So please just bear in mind I am trying to be an impartial referee, so to speak. All right.
Later, in the court's charge to the jury, he recited:
It is proper to add the caution that nothing said in these instructions—nothing in any form of verdict prepared for your convenience—is to suggest or convey in any way or manner any intimation as to what verdict I think you should find. What the verdict shall be is the sole and exclusive duty and responsibility of the jury.

Appellant Lane maintains that the trial judge's statement requires reversal since it improperly instructed the jury on probable cause. This Court concludes that any error resulting from the judge's statement was harmless.

■ In order to conclude that an error was harmless, this Court must be convinced, after examination of the entire record, that the error was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, at 24, 87 S.Ct. 824, at 828, 17 L.Ed.2d 705 (1967). Lane attempts to show harm by contending that the judge's statements interfered with his attempt to place doubt upon the Government's case by demonstrating that there was doubt as to the identity of the heroin dealer.[2] However, both agent Howard and Bradley identified Lane in court as the individual responsible for selling the heroin. In light of these individuals' positive identification of Lane as the heroin dealer, this Court concludes that there is no reasonable possibility that the judge's remarks might have contributed to Lane's conviction. *Chapman v. California*, 386 U.S. at 23–24, 87 S.Ct. at 824; *Fahy v. Connecticut*, 375 U.S. 85, 86–87, 84 S.Ct. 229, 230, 11 L.Ed.2d 171 (1963); *United States v. Lay*, 644 F.2d 1087, 1090 (5th Cir.), *cert. denied*, 454 U.S. 869, 102 S.Ct. 336, 70 L.Ed.2d 172 (1981); and *Null v. Wainwright*, 508 F.2d 340, 343 (5th Cir.), *cert. denied*, 421 U.S. 970, 95 S.Ct. 1964, 44 L.Ed.2d 459 (1975).

■ This Court has reviewed all of the statements made by the trial judge that were allegedly improper. Having reviewed these statements in the context of the entire record, *United States v. Middlebrook*, 618 F.2d 273 (5th Cir.1980), this Court concludes that the statements, taken individually or cumulatively, do not merit reversal.

## IV. *Lane's Sentence*

■ Defendant Lane contends that the district court abused its discretion by imposing an excessive sentence. Lane was sentenced to a five-year term on both counts, the five-year terms to be served consecutively. Additionally, Lane received a three-year special parole term. However, the maximum statutory sentence on one count of distribution of heroin is fifteen years confinement, a $25,000 fine, and a special parole term of life. *See* 21 U.S.C. § 841(a)(1). Thus, Lane could have received a sentence of thirty years confinement, a $50,000 fine, and a special parole term of life since he was convicted on two counts. The sentence actually imposed falls well within the statutory limits and a review of the sentencing proceedings demonstrates that the trial judge did not act in an arbitrary or capricious manner. Consequently, this Court holds that the district court did not abuse its discretion in arriving at Lane's sentence. *United States v. Cumbie*, 569 F.2d 273, 274–75 (5th Cir.1978). Finally, Lane suggests that the trial court based his sentence on Lane's failure to "cooperate" without a basis for concluding he was in a position to do so. The argument is not supported by the record. Indeed, the trial court stated "I don't know to what extent Mr. Lane can cooperate...."

## V. *Sufficiency of the Evidence*

■ Defendant Willis contends that the evidence produced at trial was insufficient to sustain her conviction. Willis maintains that the evidence produced by the Government fails to demonstrate that she exercised dominion or control over the heroin. Additionally, Willis maintains that the Government's evidence merely demonstrates that she was present at the scene of the crime. Having reviewed the evidence according to *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), this Court concludes that the evidence was sufficient to sustain Willis' conviction.

2. Apparently, Lane was attempting to convince the jury that doubt existed as to the identity of the heroin dealer since he was not arrested on the spot by the DEA. This attempt was effectively rebutted by the DEA agents' testimony that they did not want to disclose their identity by arresting Lane on the spot. They further testified that they did feel that they had probable cause to arrest Lane on the spot had they chosen to do so.

The evidence present in the record demonstrates that Willis was more than a mere observer and that she exercised dominion and control over the heroin. Each time that Bradley purchased heroin from defendant Lane, Willis left the club at Lane's direction, proceeded to a place unknown, and soon thereafter returned with the heroin capsules sold to Bradley. Additionally, Bradley's eyewitness testimony indicated that on each occasion, defendant Willis physically transferred the heroin to defendant Lane, who in turn transferred it to Bradley. Moreover, on the second occasion, agent Howard testified that he heard defendant Lane tell Willis to "go ahead and go" and retrieve the heroin. This Court is of the opinion that such testimony furnished an adequate basis for Willis' conviction. In other words, this Court concludes that a "reasonably minded jury could accept the relevant and admissible evidence as adequate and sufficient to support the conclusion of defendant's guilt beyond reasonable doubt." *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Hewitt,* 663 F.2d 1381 (5th Cir. 1981); *United States v. Rodriguez,* 654 F.2d 315 (5th Cir.1981); and *United States v. Kelley,* 630 F.2d 302 (5th Cir.1980).

Appellant Willis also contends that the trial court erred in instructing the jury on the burden of proof. Willis maintains that the jury should have been instructed that the Government carried the burden of proving its case to a moral certainty. This contention is meritless. The standard in any criminal case is proof beyond a reasonable doubt, whether the evidence is circumstantial or direct. *United States v. Warner,* 441 F.2d 821, 825 (5th Cir.), *cert. denied,* 404 U.S. 829, 92 S.Ct. 65, 30 L.Ed.2d 58 (1971).

## VI. *The Admissibility of the Heroin*

Defendant Willis contends that the district court erred in admitting the heroin into evidence because the return receipts on the mailing envelopes, which were sent by registered mail to the DEA lab in Dallas, had apparently been destroyed or lost by the DEA. The narcotics from the two buys were contained in heat-sealed plastic bags that were contained in the mailing envelopes and were marked Government Exhibits 2 and 3, respectively. DEA chemist Behrens identified his own writing on the exhibits and testified that the plastic bags were sealed when he received them. Additionally, agent Howard identified the substances contained in the exhibits as being the narcotics he received from Bradley on the two dates in question and testified that he marked these envelopes and the evidence inside and mailed it to the lab in Dallas, in the envelopes marked Exhibits 2A and 3A. Consequently, the fact that the return receipt cards had apparently been destroyed would go to the weight of the evidence and not to its admissibility. *See United States v. Fletcher,* 487 F.2d 22, 23 (5th Cir.1973). Consequently, this Court rejects this ground of error.[3]

## VII. *Conclusion*

This Court, having reviewed the grounds of error raised by Willis and Lane, affirms the district court's judgment in all respects.

AFFIRMED.

---

**3.** Willis also maintains that the district court erred in allowing repeated comments and testimony on offenses not yet charged against her and to which she was not a party. Instead of briefing this issue, however, Willis merely refers to instances in the trial transcript. However, these instances involve previous miscellaneous narcotics buys made at the same location, and were used only to demonstrate that Willis had been seen at the club before. The evidence was introduced in an attempt to connect Willis with the club and her co-defendant and was not stressed as a point of impeachment. *See* Record, vol. III, at 183–85, 188–89, 268–69, 283, 300, and 313.