Charles MILES, Plaintiff-Appellant,

v.

The M/V MISSISSIPPI QUEEN, et al., Defendants,

The Delta Queen Steamboat Company, Defendant-Appellee.

No. 83–3601.

United States Court of Appeals, Fifth Circuit.

March 1, 1985.

Rehearing Denied March 27, 1985.

**1350**

Birdsall, Rodriguez, Robelot & Nelson, Benj. A. Birdsall, Jr., Walt Robelot, New Orleans, La., for plaintiff-appellant.

Elizabeth Haecker Ryan, New Orleans, La., for defendant-appellee.

Before GOLDBERG, RUBIN, and JOHNSON, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

In a seaman's personal injury case the vessel owner refused to produce two pretrial statements made by the seaman despite the provision of Federal Rule of Civil Procedure 26(b)(3) that a party may obtain his own statement without showing any need for it. The district court refused to order that the rule be obeyed. Because the rule is mandatory, the court's failure to order production of the statements was erroneous. We hold, however, that violation of the rule is not reversible error per se, and, because the plaintiff suffered no demonstrable prejudice from his inability to review his statement before testifying, we affirm the judgment entered on the jury's verdict for the defendant.

I.

Charles Miles was employed as a member of the crew of the passenger steamboat MISSISSIPPI QUEEN in July 1981. While the vessel was travelling from Natchez to Vicksburg, Mississippi, he was fired for violating company rules. Because the vessel was then underway, Miles remained on board. The day after he was notified of his discharge, Miles reported for the first time that he had injured his back in an unwitnessed accident that he said had happened the day before he was notified. He later disembarked at Memphis, Tennessee. This suit followed.

In investigating Miles' claim, representatives of the Delta Queen Steamboat Company found reason to believe that Miles had testified falsely in his first discovery deposition and that he had given false information to the doctors who had examined or treated him. They also discovered that Miles had claimed to have been involved in two other accidents after he left the MISSISSIPPI QUEEN and that he had made damaging admissions in two statements he had given to an adjuster investigating the other claims.

Miles had by interrogatory sought his written statements obtained by Delta Queen or anyone acting in its behalf. Miles had also requested that Delta Queen "list and describe each document ... which carries ... an original or facsimile signature of the plaintiff and is or has been in [Delta Queen's] custody or control." Delta Queen objected because the request was "too broad, vague and indefinite for a relevant response," and further responded that, "subject to that objection, defendants are not at this time in possession of any written or recorded statements from plaintiff."

At the pretrial conference, defendant's counsel advised the court and plaintiff's counsel that the defendant intended to offer documents for impeachment and produced these for inspection by the court *in*

*camera,* but refused to allow plaintiff's counsel to inspect them. The documents were not further identified in the pretrial order, but Delta Queen's counsel informed Miles' counsel that he planned to introduce pretrial statements for impeachment purposes. The plaintiff then filed a motion seeking the "right to inspection of the *in camera* documents or materials submitted by Defendant in this case." The motion was denied.

After a three-day trial, the jury returned a verdict for the defendant. At the trial, Delta Queen's lawyer questioned Miles about the written statements that Miles had given to the insurance adjuster investigating the other claims. These statements were among the documents shown the court *in camera* and not produced by Delta Queen in response to Miles' request. In them Miles described his involvement in two different alleged accidents, both of which occurred, he said, after he had left the MISSISSIPPI QUEEN. In the first statement, which described an alleged back injury sustained in falling off a U-Haul trailer ramp on August 14, 1981, Miles said, "this was my first injury in any kind of accident in my life." During trial, in response to defense counsel's questions, Miles admitted that the statement was not true and that he had made the claim simply to get $600 in settlement. The second statement concerned another accident that Miles claimed occurred in September 1982. Questioned at trial about this statement, Miles admitted that he had "lied about some of it."

In the second pretrial statement, Miles said he had been carrying a refrigerator on a U-Haul trailer. During a pretrial deposition, he admitted that the refrigerator had been stolen. When asked about this on cross-examination at trial, Miles invoked the fifth amendment and declined to answer.

In response to a specific interrogatory, the jury found that Miles had not sustained any injury aboard the MISSISSIPPI QUEEN.

## II.

While statements of a party obtained by the opposing party might be considered work product, the second paragraph of Rule 26(b)(3) creates an exception to the protection generally provided for work-product material and gives a party an affirmative right to production of his own statements: "A party may obtain without the required showing [of substantial need and inability to obtain without undue hardship] a statement concerning the action or its subject matter previously made by that party." Adopted in 1970, this provision resolved a question that courts had previously decided differently.[1] This amendment, as Professors Wright and Miller correctly note, made a party's statement "discoverable as of right." [2]

The trial judge gave a reason for his refusal to order production of the pretrial statements: "Because it was apparent to me that, or it was likely that, the plaintiff was not putting everything on the table." The right of a party to have his own statement, however, is not diminished when the district court suspects duplicity. The rule does not bend to the discretion of the trial court. It allows no room for the weighing of pros and cons, although the court has some latitude in determining the time when the statements must be produced; the court may permit, for example, the party's deposition to be taken first.[3] Be-

---

1. *See* 8 C. Wright and A. Miller, Federal Practice and Procedure, § 2027 at 232 *et seq.;* 4 Moore's Federal Practice, ¶ 26.65 at 26–395 *et seq.*

2. 8 C. Wright and A. Miller, Federal Practice and Procedure, § 2027 at 238.

3. The Advisory Committee Notes state, "[i]n appropriate cases the court may order a party to be deposed before his statement is produced,"

(Rule 26 committee note (Party's Right to Own Statement) (West ed. at 159)) because "there is a legitimate interest in receiving a version of the party's testimony which has not been tailored to conform to an earlier statement." 4 Moore's Federal Practice, ¶ 26.65 at 26–397; 10 Federal Procedure, Lawyers Edition, § 26:49 at 255; *Nelson v. Puerto Rico Marine Mgt., Inc.,* 72 F.R.D. 637 (D.Md.1976); *Smith v. China Merchants Steam Nav. Co., Ltd.,* 59 F.R.D. 178 (E.D.

cause the rule is mandatory, not discretionary, the usual precept that discovery rulings are reviewed only for abuse of discretion [4] does not apply.

In the present case, Delta Queen deposed Miles on two occasions prior to trial, and thus had ample opportunity to receive a version of Miles' testimony that had not been tailored to conform to an earlier statement. Delta Queen had thus preserved the dramatic impeachment value of the prior statements.[5] There was neither reason nor excuse for delay in producing Miles' statements.

■ Delta Queen argues that the statements did not relate to the "action or its subject matter" within the meaning of Rule 26(b)(3) because they were given to third party insurance companies and concerned post-accident incidents. This argument is fanciful. The subject matter of the action was Miles' claim that he was injured aboard the MISSISSIPPI QUEEN as a result of the owners' negligence or the unseaworthiness of the vessel. Whether he was truthful in describing this alleged injury was the crucial issue at trial. The two statements bore on both questions: whether or not he had been injured on the vessel and whether or not he was credible.

■ Equally insubstantial is the argument that Miles failed to make a proper motion for production. Miles had by interrogatory sought written statements obtained by Delta Queen. While the post-pretrial-conference motion did not mention Miles' statements by name, it sought production of all of the statements that had been revealed *in camera.*

Error there was, over objections properly made. Rule 61, however, provides a reprieve from retrial for error that is not "inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." [6] This embodies the harmless error rule [7] and applies to appellate review of trial court proceedings.[8] Thus even failure to afford a party a constitutional guarantee may be found so harmless as not to warrant reversal.[9] These rules are based on the sensible concept that a new trial should not be granted because of an error that inflicted no harm. Perfection is an aspiration, but the failure to achieve it in the judicial process, as elsewhere in life, does not, absent injury, require a repeat performance.

■ Counsel for Miles has been able to point to no real prejudice resulting from Miles' inability to review his statements. The statements had been given. They were in writing. There is no contention that anything in them was untrue, save what Miles on the witness stand acknowl-

---

Pa.1972); *Straughan v. Barge MVL No. 802,* 291 F.Supp. 282 (S.D.Tex.1968).

**4.** *Sanders v. Shell Oil Co.,* 678 F.2d 614, 618 (5th Cir.1982); *Huff v. N.D. Cass Co. of Ala.,* 468 F.2d 172, 176 (5th Cir.1972).

**5.** *See, e.g., Straughan v. Barge MVL No. 802,* 291 F.Supp. 282 (S.D.Tex.1968) ("Defendant's counsel here has had the opportunity of protecting the impeachment value of the statement, since he has previously taken the plaintiff's deposition.... This provides sufficient protection to the legitimate interest which defendant's counsel might have in the statement and likewise removes any valid reason for denying plaintiff's counsel access to the statement.") *Id.* at 285.

**6.** Fed.R.Civ.P. 61 states:
No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

**7.** *See* Notes of Advisory Committee on Rule 61 (West Ed. at 252). *See also* Childress, *Standards of Review in Federal Civil Appeals: Fifth Circuit Illustration and Analysis,* 29 Loyola L.Rev. 851, 920 (1983).

**8.** *Tugwell v. A.F. Klaveness and Co.,* 320 F.2d 866 (5th Cir.1963); *Blum v. Cottrell,* 276 F.2d 689, 693 (4th Cir.1960).

**9.** *Chapman v. State of Cal.,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *United States v. Lane,* 693 F.2d 385, 390 (5th Cir.1982).

edged to be false. His deposition had twice been taken. His impeachment would have been as effective had Miles been permitted to review the statements in advance and to plot his trial strategy in the light of their actual contents.

Asked to indicate where prejudice lay, Miles' counsel asserts he could not "expect that Miles' credibility would be placed in issue to the degree that it was." It was patent, however, at the pretrial conference that Miles' credibility would be attacked: one of the stated factual issues was whether he sustained any accident while aboard the MISSISSIPPI QUEEN. Delta Queen's counsel had informed Miles' counsel at the pretrial conference that he would introduce pretrial statements for impeachment purposes. Because the alleged accident was unwitnessed, Miles' attorney should have known that his client's credibility would be the central issue in the case. Access to the statements, Miles argues, would also have influenced his settlement tactics; but this does not evidence prejudice in the trial. At most, it indicates that counsel might have been more anxious to avoid trial. Finally, counsel would have us find prejudice in Miles' inability to make intelligent use of the fifth amendment. He has not, however, indicated how the privilege might have been invoked to reduce the damage to Miles' cause.

The argument that preparation would have enabled Miles to explain any deficiencies or inconsistencies in his statements would be plausible only if the problem Miles faced were one of mere deficiency or inconsistency. In fact the statements were in direct contradiction with his trial testimony and were, as he was obliged to admit, in part untrue. Failure to permit Miles to examine his prior statements was, under the circumstances of this case, harmless.

Decision is pulled in different directions by opposing tensions. A rule intended to prevent trial by ambush and to further adequate pretrial preparation has been violated. Failure to observe it, however, has not caused the aggrieved party any real prejudice. There is no real likelihood that retrial would produce a different result. The evidence in support of the jury verdict is compelling. Under these circumstances, we view nonproduction of Miles' statements as *damnum absque injuria:* a legal wrong that has caused no real prejudice.

We do not perceive that our refusal to hold noncompliance with the rule error per se will require "an affirmative showing" that a party will suffer "some identifiable degree of actual prejudice in order to obtain production of his prior statements," as our brother Johnson fears. A district court's failure to abide by the literal dictate of the rule is clearly error, and we so hold. We are confident that, knowing this, district judges will heed the mandate in the future. But not all past error, however egregious, exacts a new trial and our failure to reverse is not likely to encourage future error.

Miles' counsel has not adequately excused his failure to make contemporaneous objections to Delta Queen's closing argument and the trial court's jury instructions. We thus review the argument and instructions under the plain error standard, and we find no such error.

For these reasons, the judgment is AFFIRMED.

JOHNSON, Circuit Judge, dissenting:

This dissent is written to express the view that the district court's refusal to order Delta Queen's compliance with Federal Rule of Civil Procedure 26(b)(3) constituted a per se violation of that rule and was thus reversible error.

While acknowledging that the second paragraph of Rule 26(b)(3) makes a party's previous statements "concerning the action or its subject matter" discoverable as of right, the majority opinion nevertheless holds that the district court's refusal to order Delta Queen's compliance with the rule is harmless error because Miles suffered no prejudice. In reaching this conclusion, the majority stresses that "[i]t was patent ... at the pretrial conference that Miles' credibility would be attacked" and that "Delta Queen's counsel had informed Miles' counsel at the pretrial conference that he would introduce pretrial statements for impeachment purposes." Majority op.

at 1353. The indisputable fact remains, however, that the *specific* pretrial statements which Delta Queen intended to use were never identified to Miles. In my view, therein lies the prejudice. Simply put, Rule 26(b)(3), in lucid terms, allows a party to discover his pretrial statements. Further, as the majority points out, the trial court has no discretion whatsoever in making its discovery rulings in this regard. In other words, the court was obligated by Rule 26(b)(3) to order Delta Queen's compliance with Miles' discovery request. Hence, a violation of the rule denotes inherent prejudice to the party seeking his pretrial statements.

The result reached by the majority of this panel condones trial by ambush, the very occurrence that the rule was created to prevent. Moreover, this result has the practical effect of requiring an affirmative showing by a party that he will suffer some identifiable degree of actual prejudice in order to obtain production of his prior statements. This, Rule 26(b)(3) does not require.

For the foregoing reasons, this dissent is respectfully made.